Ruggles, C. J.
 

 Assuming, but without deciding, thai the rights and obligations *arising out of the relation of principal and surety, continue to exist between the creditor and the surety, after the judgment against the latter; this case must, according to my view of it, be decided against the defendant, on the ground, that he voluntarily rejected the offer and abandoned the right of being substituted in the place of the creditor, and of having the benefit of his remedy against the principal debtor.
 

 On the 23d of February 1844, Carpenter wrote to the complainants a letter, dated at Carthage, Jefferson county, where he then resided, requesting them to send to that place an execution against himself, subject in all respects to his own control, with positive directions to the officer not to attempt to harass or perplex him in the least, but to do with it as he should direct; stating, that Ellis and his counsel had always assured him, that he should be kept harmless and protected throughout, and that he thought, if the execution was so sent, they
 
 *172
 
 miglit be induced to arrange it, in whole or in part; hut that unless he could have the entire direction of it, it would be of no use to send it.
 

 This was, very clearly, a proposition to which the complainants were under no obligation to accede. They had, at that time, an execution in the sheriff’s hands against Carpenter, on the same judgment, unreturned, and which Carpenter had told the sheriff he had no means of satisfying; and Carpenter told the plaintiffs so, in the same letter in which he asked for another execution. The plaintiffs were certainly not bound to put themselves into Carpenter’s power, by any such directions as he asked in relation to the executions against himself. Instead of doing so, they sent him a
 
 fi. fa.
 
 against Ellis, with the following letter (The learned chief justice here stated the plaintiffs’ letter of the 28th February 1844, and the defendant’s reply thereto, of the 4th March, refusing to have anything to do with the execution, and continued):—
 

 *Here, then, was an explicit offer on the part of the complainants to give to Carpenter the benefit of the judgment and execution against Ellis: and a positive refusal on his part to have anything to do with it. This was not merely an offer to give him the benefit of the execution, upon payment of his part of the debt. It was an offer to give him that benefit;
 
 before
 
 payment, and, therefore, better than the complainants were bound to make; and yet it was rejected.
 

 At the time of this correspondence, Ellis was, and had been, for more than a year, insolvent. Carpenter represented himself *to be so. Carpenter’s right, as surety, to make use of the complainant’s judgment against Ellis, must have been regarded by him as of no value, and it was, probably, for that reason renounced. Under these circumstances, it seems to me, that the complainants were at liberty to pursue such course for the collection of the balance, as seemed most
 
 *173
 
 conducive to their own interest, without regard to Carpenter’s equitable right to subrogation.
 

 The equity of a surety can never be set up, in such way as to embarrass the creditor in an honest endeavor to collect his debt from the principal debtor; if he claims equity, he must do equity. Carpenter could not, or would not, pay the debt; nor would he take the control of the execution to collect it from Ellis. The complainants afterwards advertised for sale under their execution, property in the possession of Ellis, claimed by other persons, and when the day of sale arrived, it was ascertained that they could not proceed with the sale, without encountering the hazard and expense of obstinate litigation. This they were not bound to do, for the benefit of the.surety; they made a compromise, which they had a right to do. Carpenter, by this defence, places himself in the attitude of - a surety, who will neither pay the debt himself, nor permit the creditor to collect it of the principal debtor; this is not a surety’s equity.
 

 The arrangement made on the 21st of August 1845, was not a satisfaction of the judgment against Ellis. The complainants stipulated that
 
 they
 
 would never enforce it against Ellis; but with a reservation or condition that the stipulation should in no way affect their rights and claims under their judgment against Carpenter. Ellis agreed to this, by his acceptance of the receipt; and the effect of it was, to give to Carpenter the right to compel Ellis to refund to him whatever he might after-wards be compelled to pay to the complainants. (Pit-man on Principal and Surety, 181-2, 189.)
 

 The complainants, at the same time, assigned their judgment against Ellis to McCumber, but with a similar reservation of *their remedies against Carpenter. It is unnecessary to say, whether Carpenter, if he should pay the complainants, would still have a right to claim from McCumber the benefit of the judgment and execution against Ellis. Admit that he
 
 *174
 
 would not, and tlie case is not altered; Carpenter, by refusing to take the control of the execution when he might have had it, and when he ought to have taken it, justified the complainants in making such fair and honest disposition of it, as was most advantageous to themselves. All Carpenter’s rights against the principal debtor remain, excepting the right of making use of the complainants’ judgment; and of that, if lost, he has deprived himself.
 

 The judgment of the supreme court, at the general term, should, therefore, be reversed, and the judgment at the special term affirmed, with the costs of the appeal to the general term.
 

 Judgment reversed, and that of the special term affirmed.