## EDWARD L. THOMAS, Plaintiff, *v.* THE MONTAUK FIRE INSURANCE COMPANY, Defendant.

*Right of an insurance company to be subrogated to the rights of a mortgagee to whom it has paid a loss—what satisfaction of the debt by the mortgagee prevents his recovering on the policy.*

This action was brought upon a policy of insurance, issued by the defendant, by which it insured "William Emerson against loss　*　*　*　to the amount of six hundred dollars on his frame ice house　*　*　*　Loss, if any, payable to E. L. Thomas (the plaintiff), mortgagee, as his interest may appear" There was no undertaking on the part of Emerson, who owned the property, to insure, and the policy was procured and the premium thereunder was paid by Thomas. The property was destroyed by fire, in October, and on November 17, 1874, the mortgagor paid to the plaintiff the interest upon the bond and mortgage, and deeded the property to him, receiving from him the bond and mortgage upon which the plaintiff had indorsed the following receipt: " Received by deed in full of the within bond and the debt thereby secured, and the same is hereby surrendered and canceled; but the insurance procured and paid for by E. L. Thomas at his expense and for his protection, and any sum he may collect by reason of the same, is not affected by this surrender, but are and remain his property."

*Held*, that the policy was to be treated as a contract with the plaintiff for his indemnity only, with no right in the mortgagor to the benefit of it in case of loss.

That upon payment of the loss to the mortgagor by the insurance company, it would acquire the right of subrogation *pro tanto*, and might enforce the mortgage and bond to which it was collateral, to that extent.

That such right does not rest on contract, but on principles of justice and considerations of equity, which enable a party, who has been required to pay the debt for which another is primarily liable, to become subrogated to the rights and remedies of the creditor.

That if such right of subrogation on the part of the defendant was defeated by the act of the plaintiff, the latter could not recover in this action.

That the receipt given by the plaintiff should not be construed as an absolute discharge of the debt, but as an undertaking on the part of the plaintiff not to prosecute the mortgagor, reserving to the plaintiff the right as against the defendant to collect the amount due from it to him upon the policy.

That as the receipt, as so construed, would not be available as a defense to the mortgagor in an action brought against him by the insurance company, it did not prevent the plaintiff from maintaining this action.

*Connecticut Fire Ins. Co.* v. *Erie Ry. Co.* (73 N, Y., 399) followed.

*Quære*, as to whether the defendant, in exercising its right of subrogation, might be required to first seek relief against the mortgagor upon the bond.

MOTION by the plaintiff for a new trial, on exceptions taken at the Monroe Circuit, and ordered to be heard at the General Term in the first instance.

The action was brought upon a policy of insurance made September 12, 1884, by the defendant, by its terms insuring for one year " William Emerson against loss * * * to the amount of six hundred dollars on his frame ice-house. * * * Loss, if any, payable to E. L. Thomas, mortgagee, as his interest may appear." Emerson had the title. The plaintiff was his mortgagee to the amount of $5,000. No undertaking on the part of the mortgagor to insure appears. The plaintiff, on his own account, procured the policy and paid the premium. The property was destroyed by fire October 13, 1884. The plaintiff thereupon commenced an action to foreclose the mortgage, and on November 17, 1884, the mortgagor paid to the plaintiff the interest upon the bond and mortgage and made to him a deed of the property, and upon the bond the plaintiff indorsed a receipt as follows:

" Received by deed, etc., in full of the within bond and the debt thereby secured, and the same is hereby surrendered and canceled. But the insurance procured and paid for by E. L. Thomas at his expense and for his protection, and any sum he may collect by reason of the same, is not affected by this surrender, but are and remain his property.

" ROCHESTER, *November* 17, 1884.

"E. L. THOMAS."

The plaintiff was nonsuited.

*J. D. Lynn*, for the plaintiff.

*R. E. White*, for the defendant.

BRADLEY, J.:

The questions presented are: First. Did the contract of insurance between the plaintiff and the defendant give to the latter the right of subrogation in the event of loss and payment of it? Second. If it did, was that right defeated by the payment of the bond and mortgage to, and the surrender of them by, the plaintiff as represented by the receipt of the latter?

Although the mortgagor was named as a party insured by the policy, it was in fact taken by the plaintiff, as mortgagee, solely for

his own benefit, and the premium was paid by him without any arrangement with the mortgagor that he should be charged with the expense of the insurance. The case is, therefore, distinguished from *Grosvenor* v. *The Atlantic Fire Insurance Company* (17 N. Y., 391), and the policy may be treated as a contract with the plaintiff for his indemnity only, with no right in the mortgagor to the benefit of it in case of loss. In such case the rule in this State is that on payment of the loss to the mortgagor by the insurer the latter takes the right of subrogation *pro tanto*, and may enforce the mortgage and the bond, to which it is collateral, to that extent. (*In Matter of Kip*, 4 Edw. ch. 86; *Ætna Fire Ins. Co.* v. *Tyler*, 16 Wend., 385; *Kernochan* v. *N. Y. B. Fire Ins. Co.*, 17 N. Y., 428; *Excelsior Fire Ins. Co.* v. *Royal Ins. Co.*, 55 id., 343, 357; *Foster* v. *Van Reed*, 70 id., 19, 24; *Ulster Co. Savings Institution* v. *Leake*, 73 id., 161, 164.)

The question presented here did not necessarily arise in those cases, but the doctrine has been repeatedly stated by the courts of this State, and the proposition must be deemed adopted and settled here. The principle upon which the rule is founded is not very clearly defined by the cases. It is, however, put upon the ground analogous to that arising out of the relation of principal and surety. In *Carpenter* v. *The Providence Washington Insurance Company* (16 Peters, 501) STORY, J., says that "where the mortgagee insures solely on his own account, it is but an insurance of his debt," and and upon payment of the loss "the underwriters are entitled to an assignment of the debt from the mortgagee, and may recover the same amount from the mortgagor, either at law or in equity, according to circumstances, for the payment of the insurance by the underwriters does not in such case discharge the mortgagor from the debt, but only changes the creditor." To say in such case that the insurance is of the debt, is evidently not an accurate expression. The insurance is of the mortgagee's interest in the property, and of the security for the debt rather than the debt itself, and is taken for his indemnity in that respect. And the liability of the insurer arises upon any loss of the property by fire, without reference to the question, whether or not the remaining security is adequate for the payment of the mortgage debt.

The remedy over by way of subrogation is given because the

insurer has been required by its contract to pay the loss, which, as between it and the mortgagee, operates to discharge *pro tanto* the debt without affecting the liability of the mortgagor or the force of the mortgage given to secure it.

The adoption of this proposition makes the way to the right of subrogation, as the consequence, clear. Such right does not rest in contract, but on principles of justice and considerations of equity, which enable a party who has been required to pay the debt, for which another is primarily liable, to become subrogated to the rights and remedies of the creditor. (*Gans* v. *Theime*, 93 N. Y., 225.) It will not be questioned that when a mortgagee, solely on his own account and at his own expense, procures an insurance of his interest, the contract is wholly between him and the insurer, and that the mortgagor is not entitled to the benefit of any liability incurred or payment made by the insurer on the contract of insurance. But whether the underwriter, without the aid of a provision to that effect in the policy or contract, can, on payment, take any benefit of the security by means of subrogation to the remedy of the mortgagee, has been questioned by some judicial authority and text writers. And in that respect, the courts of Massachusetts are not in harmony with those of this State. (*King* v. *State Mut. Fire Ins. Co.*, 7 Cush., 1; *Suffolk Fire Ins. Co.*, v. *Boyden*, 9 Allen, 123.) In the view taken of the contract of insurance, the mortgagor had no beneficial relation to it, and on payment by the defendant of the loss, it would have the right of subrogation. It follows that if such right was defeated by the act of the plaintiff, he cannot recover. The transaction between him and the mortgagor, as represented by the receipt of the plaintiff, was that the interest on the debt, and the deed of the property were received in full of the "bond and the debt thereby secured," and that it was surrendered up and canceled. The question arises upon the construction and effect of this provision of the instrument in connection with the following, which adds: "But the insurance procured and paid for by E. L. Thomas, at his expense and for his own protection, and any sum he may collect by reason of the same, is not affected by this surrender, but are and remain his property." This paper was signed by the plaintiff and delivered with the bond to the mortgagor. And if it may be construed as a release of the

latter, with the reservation of the right to proceed against the defendant upon the policy, the instrument may be treated as an undertaking of the plaintiff not to prosecute the mortgagor. (*Price* v. *Barker*, 4 E. & B., 760; *Couch* v. *Mills*, 21 Wend., 424; *Matthews* v. *Chicopee Mfg. Co.*, 3 Rob , 711; *Green* v. *Wynn*, L. R., 4 Ch. App., 204; affirming S. C., L. R., 7 Eq., 28; *Hubbell* v. *Carpenter*, 5 N. Y., 171.) If, however, the mortgage debt was fully paid by the mortgagor, that rule cannot apply, and the remedy over by way of subrogation is gone, and with it the plaintiffs' right of action against the defendant is defeated.

The provision that the insurance is not affected by the surrender of the bond, in the manner that it was done, is not consistent with that declaring a receipt in full of it. And when the intent of the parties is sought for in the instrument and the surrounding circumstances, so far as they furnish any aid in that respect, if it may be seen that the purpose was to enable or permit the plaintiff to proceed to collect his loss from the defendant, which could not be accomplished if payment in full was made by the mortgagor to the plaintiff, but to treat it as in full, subject to the right of the plaintiff reserved, furnished by the policy, to collect of the defendant an amount on account of the loss by fire, the several provisions of the receipt or release were consistent and may be harmonized. And if such purpose appears from the paper and attending circumstances, the mortgagor may not be permitted to make the release effectual as a defense to an action by the defendant to enforce its right of subrogation.

In *Connecticut Fire Insurance Company* v. *Erie Railway Company* (73 N. Y., 399, reversing S. C., 10 Hun, 59), the defendant had become liable to the owner of property insured by the plaintiff, for loss by fire occasioned by the negligence of the railway company, with which the insured made a settlement, reduced to writing, which purported to be "in full of all claims, demands and causes of action" against the railway company for $2,100 received; but a clause was inserted that it was not intended to discharge the insurance company from any claim which the insured had against it for insurance, "but as a full settlement with and discharge of the Erie Railway Company only." The court there held that, in view of the circumstances, the instrument of settlement should be so

construed as to give effect to the reservation, and preserve the claim of the insured against the insurance company, and render the settlement with the railway company subject to such right.

It is difficult to distinguish, in rule of construction and effect applicable, the case at bar from that one. Here the amount of the bond and mortgage, exclusive of interest, appears to have been $5,000.

The only evidence of value of the premises, at the time of the conveyance to the plaintiff, tended to prove them worth $1,200. This (if such was their value) was very much less than the debt secured by the bond and mortgage. This fact is a mere circumstance, not excluded from consideration in the construction of the release, on the question of the intent of the parties, and whether the purpose was, that the interest paid and the conveyance made should pay and discharge in full the mortgage debt. If such were the intent of the parties, it is not apparent why they provided by the terms of the instrument that the receipt and surrender, and their purpose as there expressed, should not affect the insurance in question taken by the plaintiff, unless it was by reason of the form of the undertaking of insurance in the policy, and that, notwithstanding which, and the release, they understood the plaintiff was entitled to collect of the company.

We think the doctrine established in *Connecticut Fire Insurance Company* v. *Erie Railway Company* requires the conclusion that the exception to the direction of nonsuit was well taken. If this view is correct, there is no question of surrender of the bond and mortgage, or of merger by the conveyance in the way of the exercise of the right of subrogation. Such right has relation to the situation of the security held by the mortgagee at the time of the loss for which recovery is sought. What advantage the plaintiff will finally realize by a recovery in this action, is not the subject of inquiry here, as it is not now necessary to determine whether, in the exercise of the right of subrogation, the defendant may be required to first seek relief upon the bond against the mortgagor.

The motion for a new trial should be granted, costs to abide the event.

Barker and Haight, JJ., concurred; Smith, P. J., not voting.

Motion for new trial granted, costs to abide event.