Haight, J.
This action was brought upon a policy of insurance issued by the defendant to the plaintiff. The plaintiff held a mortgage upon the premises of one William Emerson, conditioned to pay his bond for $5,000, which accompanied the mortgage. As mortgagee he procured the insurance policy in question upon the ice houses, upon the premises, which were subsequently destroyed by fire. Thereupon the plaintiff commenced an action to foreclose the mortgage, and subsequently a settlement was effected by the attorneys of the parties.
Emerson paid to the plaintiff the interest that had accrued upon the mortgage and deeded to him the real estate covered by it, the plaintiff’s attorney joining with the attorney for Emerson in a stipulation entitled in that action reading as follows: “ This action is settled and discontinued, and either party may enter an order to that effect and cancelling the lis pendens filed therein, without costs or notice to the other. Dated, November 11, 1884.” At the same time the plaintiff’s attorney executed and delivered to the attorney for Emerson a receipt entitled in that action, reading as follows: “Received of William Emerson by George A. Benton, attorney, $239, in consideration of which and a deed this day given by said Emerson to Thomas, this action is to be discontinued and the bond in suit surrendered. J. D. Lynn, plaintiff’s attorney.” Subsequently, but how long thereafter does not appear, the bond accompanying the mortgage was delivered to Mr. Benton, the attorney for Emerson, with the following indorsement thereon: “Received by deed, etc., in full of the within bond, and the debt thereby secured, and the same is hereby secured and canceled. But the insurance procured and paid for by E. L. Thomas, at his expense and for his own protection, and any sum he may collect by reason of the same, is not affected by this surrender, but are and remain his property. Rochester, November 11, 1884. E. L. Thomas.” So far the evidence is undisputed.
Mr. Benton, the attorney for Emerson, was sworn as a witness for the defendant on the trial of this action, and testified that after the foreclosure action had been brought he saw Mr. Lynn, the attorney for the plaintiff, in reference to a settlement of the suit; that they had several conversations, and that a stipulation was signed [the one already quoted], and the money was paid to Mr. Lynn by him, and the receipt referred to was taken therefor, and a deed was given of the property covered by the mortgage; that he did not receive the bond in suit at that time; that it was to be surrendered within a short time; that he cannot tell exactly how long after he received the bond, but it was some little time after, and when it was given to him it con *740 tained the indorsement that is now on the bond. He further testified: “At the time I paid the money and received a receipt, the insurance policy that Mr. Thomas held was mentioned. In the course of the conversation, I remember Mr. Lynn said: “You know we have got a claim against the company.’ I replied that I had heard so, or something of that sort, but that I had nothing to do with that; that this payment of the money and deed was to be in full satisfaction of all claims against Mr. Emerson, who was to be relieved from all liability on his bond, and that was all I had to with him; and I said I did not care anything about the claim against the insurance company, and this was said before I received the bond with the receipt upon it.”
He further testified that he was confident that there was nothing written on the back of the bond at the time they settled. Mr. Lynn, the attorney for the plaintiff, was sworn on behalf of the plaintiff, and testified that Mr. Benton did not tell him in word or in substance, that Emerson was to be discharged from all liability by the payment of the money and the giving of the deed; that he did not say in word or in substance, that he did not care what was done with the insurance policy, as long as Emerson was discharged from his liability on the bond. He further testified that in the conversation had with Benton at the time of the settlement he said that they did not intend to do anything that would affect their right to recover the insurance; that he had the bond lying on the table and had drawn the receipt upon the back of it; that he had it already prepared and dated, but that it was not delivered at that time because his client was not there to sign it; that subsequently his client came in and signed it, and that he then delivered it to Mr. Benton.
It thus appears that there is a square conflict between these witnesses as to what the agreement was between the plaintiff and Emerson at the time the foreclosure sale was settled. One contending that the conversation was that Emerson was to be absolutely relieved from all liabilty upon his bond; that the deed given and the money paid, was to be in full satisfaction thereof, and that the stipulation discontinuing the action and the receipt given, signed by Mr. Lynn as the attorney for the plaintiff is evidence of that fact. Whilst, on the other hand, it is claimed that the agreement was that the right to recover the insurance was reserved, and that the indorsement upon the bond signed by the plaintiff is evidence of that fact.
This' case has been considered by this court in reviewing a former trial. It was then held that the insurance company qpon paying the loss took the right of subrogation pro tanto and may enforce the mortgage and bond to which it *741 is collateral to that extent. Upon that review the case rested upon the receipt indorsed upon the bond and this court was then of the opinion that the concluding clause thereof indicated an intention of the parties to reserve the insurance, but if, as is now claimed, the money was paid and deed delivered in full satisfaction of the mortgage and bond and with the understanding that Emerson was to be absolutely relieved from further liability on the bond, then it follows that the right to subrogation no longer exists and the plaintiff, by his agreement with Emerson, having deprived the insurance company of that right, cannot recover upon his policy.
The question is, therefore, what was that agreement ? It is contended on the part of the plaintiff that the agreement is evidenced by the indorsement made upon the bond; that the defendant having received the bond and retained it with the indorsement on it, must be deemed estopped from now asserting that it does not disclose the agreement. If the bond with this indorsement upon it had been delivered at the time of the settlement and was all the evidence there was of the transaction upon that subject, the rule would doubtless be as claimed. Hubbell v. Carpenter, 5 N. Y., 171-177.
But the receipt given at the time of the settlement contains no reservation of the right to collect the insurance, but provides that the action is to be discontinued and tho bond in suit surrendered, which standing alone would lead us to conclude that it was the intention of the parties to make surrender of the bond absolute, and that Emerson was to be relieved from all further liability thereon.
We are consequently of the opinion that as between these conflicting instruments it becomes the duty of the court to consider the circumstances under which they were executed and delivered, what was said and done by the parties in reference thereto. Upon this subject, as we have seen, the evidence is conflicting and the request of the defendant to submit the same to the jury should have been granted, and the exception upon such refusal makes a new trial necessary.
Motion for new trial should be granted, with costs to abide the event.
Smith, P. J.. Barker and Bradley, JJ., concur.