## THOMAS ET AL. v. WASON, RECEIVER.

1. PRINCIPAL AND SURETY.
Generally, if a creditor recovers judgment against a principal and surety, or against the surety alone, and execution is issued thereon and levied upon the property of the principal subject thereto, and such property is by the act of the creditor released from the levy and lost as a security, the surety is discharged to the extent of his injury. The exception to this rule must be confined to that class of cases as where the surety for the purpose of his indemnification has obtained possession or control of property or money of the principal debtor sufficient for the payment of the debt, and which would otherwise be available to the creditor for that purpose.

2. SAME—INJUNCTION BONDS.
To fix the liability of sureties on an injunction bond there must be a judgment against their principal, but such judgment may be recovered against the principal and sureties in the same action.

3. SAME.
Action against principal and sureties on an injunction bond jointly, judgment taken against the principal, alone, upon which execution was issued, and by levy money of the principal more than was sufficient to pay the judgment was secured. *Held*, that by such seizure the condition of the undertaking was satisfied.

*Appeal from the District Court of Arapahoe County.*

Messrs. THOMAS, HARTZELL, BRYANT & LEE, for appellants.

Messrs. CARPENTER & McBIRD, for appellee.

THOMSON, J., delivered the opinion of the court.

This suit was brought upon the following undertaking for injunction:

" Petition of THE BACHELOR TRANSPOR-
TATION COMPANY in the suit of MASON
B. CARPENTER and WILLIAM N. MC-
BIRD,

PLAINTIFFS.

vs.

THE WASON TOLL ROAD COMPANY
and WILLIAM H. COCHRAN,

DEFENDANTS.

*Undertaking on Injunction.*

" Whereas, The above named petitioner has filed a petition
in the above action in the District Court of the Second Judi-
cial District of the State of Colorado, in and for the said
County of Arapahoe, against M. V. B. Wason, Receiver in
said action, and has applied for and obtained a temporary
restraining order against said M. V. B. Wason, as said
Receiver, enjoined and restraining him from the commission
of certain acts, as in the petition filed in the said action is
more particularly set forth and described, and as set forth in
said restraining order.

" Now, Therefore, we, the undersigned, residents of the
County of Arapahoe, State of Colorado, in consideration of
the premises, and of the issuing of said restraining order, do
jointly and severally undertake in the sum of three thousand
dollars, and promise to the effect, that, in case said order
shall issue, the said plaintiff will pay to the said Wason as
Receiver, all such costs and damages as shall be awarded
against the complainant in case the said injunction shall be
modified or dissolved in whole or in part.

" Dated this 16th day of December, A. D., 1893.

" THE BACHELOR TRANSPORTATION COMPANY,

" By C. H. PIERCE, Its Attorney.

" W. H. BRYANT,

" C. S. THOMAS."

The injunction was dissolved, and the plaintiff, receiver,
brought this action to recover his costs and damages.

The undisputed facts as they appear from the evidence

are as follows: After the injunction was dissolved, the receiver brought suit upon the undertaking against The Bachelor Transportation Company, and Thomas and Bryant, in which judgment was rendered against the Transportation Company, alone, for $1,130. When Thomas and Bryant signed the undertaking, they exacted and received an indemnifying bond, in which the obligors covenanted to make good to them whatever loss they might sustain by reason of the undertaking which they had signed. Summons had been served on the Transportation Company some time before service was had upon them, and at the time judgment was rendered against the company the period within which they were required to answer had not expired. An execution was issued upon the judgment, and by means of it the sum of $4,300 of money belonging to the Transportation Company was secured. About a month after the rendition of the judgment, an agreement was entered into between the attorneys representing the receiver and the company respectively, which provided that the judgment against the company should be vacated, and the execution recalled, and another judgment entered against all the defendants, the attorneys for the receiver stipulating to make the money, if possible, out of the defendants other than the company. In accordance with this agreement the judgment against the company was set aside, the execution recalled, the money which had been secured released, and a new judgment entered against the Transportation Company and the sureties, Thomas and Bryant, jointly, and an execution issued upon it against Thomas and Bryant. Until the issuance of this execution the latter had no knowledge of the agreement we have mentioned, or of any of the proceedings which were subsequently had in the case. Thomas and Bryant having received information of the agreement, and of the subsequent proceedings, upon their application the judgment was set aside as to them, and they answered; and the trial which followed resulted in a judgment against them for $808.70, from which they

have prosecuted an appeal to this court.   Upon this trial the facts appeared as we have detailed them.

Several points are made for a reversal of the judgment, but the only question which we deem it important to consider concerns the effect of the proceedings of the plaintiff in relation to the judgment against the Transportation Company upon the liability of the sureties.   In Brandt on Suretyship and Guaranty, section 378, we find the following general rule laid down :  " If the creditor recovers a judgment against principal and surety, or against the principal alone, and execution is issued thereon and levied upon real or personal property of the principal subject thereto, and such property is, by the act of the creditor, released from the levy, and lost as a security, the surety is discharged to the extent that he is injured thereby."   The doctrine of the text is fully sustained by the adjudications.   But we are met on behalf of the plaintiff by the proposition, as an exception to this general rule, that where sureties are indemnified they are not released by a release of the principal; and it is contended that the facts of this case bring it within the exception.   As sustaining this proposition we are cited to the following adjudged cases.   *Moore v. Paine*, 12 Wend. 123 ;  *Hubbell v. Carpenter*, 5 N. Y. 171;  *Chilton v. Robbins*, 4. Ala. 223 ;  *Morrison v. Bank*, 65 N. H. 253;  *Jones v. Ward*, 71 Wis. 152.

If counsel's doctrine is correct, a release of the principal debtor cannot be pleaded by the indemnified surety, no matter what may be the nature of his indemnity.   We think the proposition is too comprehensive ; and, except within limits outside of which this case falls, it is not sustained by the decisions to which we have been referred.   In *Moore v. Paine*, the sureties were secured by a bond and warrant of attorney, executed by the principal for the payment of $1,000, and authorizing the confession of judgment against him for the amount.   The bond and warrant were executed with the intent to place money in the hands of the sureties to enable them to pay the bond on which they were sureties.   They caused a judgment upon their bond to be entered, and col-

lected upon the judgment $750, which they retained. The amount for which they were liable as sureties was $500. The court said : " The sureties received from the debtor the whole amount to become due on the bond in question, and after that, as between him and them, they were the principals and owed the debt." In *Chilton v. Robbins*, the sureties had obtained from the principal a deed of trust on property to secure themselves against liability on their suretyship, which was ample for that purpose. The court held that the taking of the trust deed was, in effect, an appropriation by them of that portion of the effects on the principal to the payment of the debt. The court, in *Jones v. Ward*, illustrated the rule by which it held the indemnified sureties liable, notwithstanding the release of the principal, as follows: " A. becomes security for B. to C. for the payment of $1,000. B. puts property into the hands of A., worth $1,000, to indemnify him against loss because of the obligation thus assumed by him. C. releases B., the principal debtor, from all liability on account of the debt, but receives no payment thereon. A., the surety, then sells the pledged property for $1,000, and retains the proceeds. It is entirely reasonable and just that, notwithstanding the release of the principal debtor, C. should have his remedy against the surety for the amount realized by him in the sale of the pledged property." The decision in *Hubbell v. Carpenter* was simply that a surety by refusing to take the control of a judgment and execution against the principal debtor, when offered to him by the creditor, might deprive himself of the right to demand subrogation, when the debt was sought to be collected from him. There was no question of indemnity in the case. The decision in *Morrison v. Bank* is equally inapplicable.

Where a surety for the purpose of his indemnification has obtained possession or control of property or money of the principal debtor, sufficient for the payment of the debt, and which would otherwise be available to the creditor for that purpose, to permit him to retain the security and repudiate the obligation would be unjust, whether the principal was

released or not; and it is in such cases that the courts have held that the release of the principal debtor does not discharge the surety. We think that the exception to the general rule must be confined to this class of cases, and that it cannot be extended to the case of an indemnifying bond executed by other sureties, without abrogating the rule itself.

The defendants, Thomas and Bryant, as sureties on the injunction undertaking, were indemnified by a bond executed by a number of persons, conditioned for the payment of such damages as they might sustain by reason of their suretyship on the undertaking. This bond was executed at the instance of The Bachelor Transportation Company, or persons acting in its behalf. The obligors upon this bond were sureties for the Transportation Company. If the company should fail to pay the damage awarded against it, they were the persons who were ultimately liable, and they would be directly affected by a release of the company from its liability. As against them, neither the receiver, nor Thomas and Bryant, had the right to discharge the company, or relinquish the money which had been taken by the execution. They were immediately interested in having that money applied in the payment of the judgment; and if Thomas and Bryant had failed in this suit to avail themselves of the transaction between the receiver and the company, their right of action upon the indemnifying bond would have been lost. If they had set idly by and suffered judgment, to which the plaintiff was not entitled, to go against them by default, they could not compel reimbursement from the indemnifying bondsmen. The rights of the latter could not be wantonly sacrificed, either by the act of the receiver, or the negligence of Thomas and Bryant. The defense made by Thomas and Bryant was therefore proper. It was one which they had the right to interpose, and which, in justice to the persons securing them, it was their duty to interpose.

But there is another ground, unconnected with any question of indemnity, upon which we can dispose of the case with equal satisfaction to ourselves. The undertaking was

that the Transportation Company would pay to the receiver all such costs and damages as should be awarded against it, in case the injunction should be modified or dissolved in whole or in part. To fix the liability of the sureties there must be a judgment against the company. Code, section 161, provides that in suing on such an undertaking, it shall not be necessary to bring suit in the first instance against the principal to ascertain the amount of damages sustained; but that principal and surety may be sued together, and damages assessed and awarded against both. Without this provision it would be necessary to obtain judgment against the principal before proceeding against the surety. The code simply permits a joint action. It does not forbid a suit against the principal first, and parties are at liberty to proceed in that manner if they so desire. This action was brought against the principal and the sureties jointly; but the plaintiff saw fit to take judgment against the principal alone. That judgment was regular and valid. Execution issued; and more money than sufficient to pay the judgment was secured. This money was voluntarily released by the plaintiff. When the money was levied upon, the purpose for which the undertaking was given was accomplished. As the undertaking was that the company would pay the judgment, if it had voluntarily done so, the moment the payment was made the right of action upon the undertaking was extinguished; and no subsequent return of the money to the company could revive it. Instead of being paid voluntarily, however, the money was seized by execution. It thus passed within the control of the plaintiff for the purpose of paying the judgment; it was as available for that purpose as if it had been delivered to the plaintiff by the company; its seizure by the execution was equivalent to payment by the company, and by a payment, whether voluntary or compulsory, the condition of the undertaking was satisfied. The plaintiff released the money, and suffered it to be returned to the company at his own peril. When the money, sufficient for the payment of the judgment, came within the con-

trol of the plaintiff, and might have been used to discharge the judgment, all liability upon the undertaking was extinguished, and the instrument could not thenceforth be made the foundation of an action.

The judgment must be reversed.

*Reversed.*

### ON PETITION FOR REHEARING.

THOMSON, J., delivered the opinion of the court.

We deem it proper to bestow a few words upon the petition for a rehearing filed in this cause. The first reason given why a rehearing should be allowed is as follows: " The opinion handed down is based upon the idea that the bond in suit was the bond of The Bachelor Transportation Company, as principal, and that appellants are mere sureties for the company. Whereas, in truth and fact, as shown by the pleadings and the evidence, The Bachelor Transportation Company was only a nominal party—the real parties being the persons signing the indemnifying bond to the appellants." The bond was given to enable The Bachelor Transportation Company to obtain a writ of injunction against M. V. B. Wason, receiver of The Wason Toll Road Company. If the appellants were not sureties for that company, the instrument was not a bond, and the appellants were not sureties at all. If the Transportation Company was only a nominal party, or was not itself the real and only party in whose behalf the injunction was granted, the record utterly fails to disclose the fact.

The following is the second reason stated:

" The opinion assumes that the indemnifying bond was executed at the instance of The Bachelor Transportation Company, or persons acting in its behalf. The pleadings and the evidence show that the Bachelor Company never knew of the bringing of the suit, or the giving of the bond until after its execution, when the indemnifying bond was given by the parties interested in obtaining the injunction."

Upon the question whether the indemnifying bond was executed at the instance of The Bachelor Transportation Company, we quote the following from the plaintiff's replication:

"That, as a condition precedent, and as an indemnity to them for signing said bond, said sureties, the defendants, Thomas and Bryant, required the said Transportation Company and other persons interested to furnish them with an indemnity bond in the sum of two thousand dollars, indemnifying and protecting them against all loss or damage they might sustain by reason of their signing as such sureties; of which indemnity bond, the following is a copy: "

Here follows a copy of the bond.

Further upon the same question, Edward Higgin, the president of the Transportation Company, and a witness for the plaintiff, testifying concerning the indemnifying bond, said:

"As I remember, the Transportation Company and others were required to furnish a bond. Other people signed it." Who besides the company were required to furnish the bond the evidence nowhere discloses. In view of the foregoing we feel safe in saying that the statement in the opinion that the bond was executed at the instance of the Transportation Company, that is, that the company procured its execution in response to the demand of Thomas and Bryant, is not an assumption. Furthermore, when it procured the execution of the indemnifying bond it must have known, even if it did not know before, of the bringing of the suit, and the giving of the injunction bond; and by furnishing the indemnifying bond it at least ratified the acts of the party assuming to represent it in bringing the suit, and in subscribing its name to the injunction bond and procuring Thomas and Bryant to sign the bond as sureties.

The remaining objection to the opinion is as follows: " The opinion assumes that the money of the Transportation Company was actually in hand, and voluntarily surrendered. The evidence shows that a certain amount of money due the

Bachelor Company was garnished, and that no proceedings were taken to ascertain the liability of the garnishees ; but that a motion was made to set aside the judgment and vacate such garnishment proceedings, and such motion was about to prevail when the garnishees were released by the acts of the appellee."

Again we have recourse to the testimony of Mr. Higgin, the Transportation Company's president:

" Q. And then were you served with summons in this suit? A. Yes, sir. Mr. Osborn, wasn't it? A constable employed by Mr. Wason, served me with summons. Q. Then did you notify Mr. Pierce, or some one, to attend to it for you? A. I did, and the county attorneys. Q. And the next thing you knew there was a judgment rendered against you? A. Yes, sir. Q. And an execution out? A. Yes, sir. Q. A judgment for $1,130, I believe, wasn't it? A. Yes, sir. Q. Then they levied upon a lot of your property? A. Yes, sir. Q. They secured money coming to you from The New York-Chance Mining Company and The Amethyst Mining Company? A. Yes, some $4,300 they tied up."

Further on, speaking of the agreement for the vacation of the judgment and the recall of the execution, the same witness testified :

" Q. Now in pursuance of that stipulation, they released all this attachment and garnishee process against your property ? A. Yes, sir. Q. And you got back your $4,300? A. Yes, sir."

It is an inference from the testimony that the money was secured by garnishment upon the execution, and it may also be inferred that a motion of some kind was interposed by the company, having for its object the relieving of the company from the garnishment. Upon all this the evidence is inferential and not direct; but that the motion, whatever it was, was about to prevail, is a pure assumption of counsel.

It is entirely clear that by means of an execution, issued upon a judgment which, so far as the record shows, was valid and enforcible, $4,300 of the company's money was in some manner levied upon ; and it is also clear that in virtue of the

stipulation the money was released by the plaintiff, and the company permitted to receive it. In respect to the securing of the money by means of the execution, and its subsequent voluntary release to the company by the plaintiff, we see no reason for changing, in any particular, the language of the opinion.

Objection is made in argument to the distinction taken in the opinion between an indemnity upon the principal's property and an indemnity by bond. The assertion is also made that the subscribers to the indemnifying bond were themselves the real parties in interest, and hence were not sureties within the generally accepted meaning of the term. We can find no evidence in support of the statement. Our knowledge of the facts is, and can be, obtained only from the record; and in so far as its disclosures are concerned, these bondsmen were sureties merely, and as such entitled to all the consideration and protection which the law extends to sureties. Their liability depended upon the liability of Thomas and Bryant, and the liability of the latter was contingent upon the failure of the Transportation Company to pay the costs and damages awarded against it in case of the dissolution of the injunction. Payment by it of these costs and damages would discharge the obligors upon the indemnifying bond, because it would extinguish liability upon the injunction bond; and any act which would operate to relieve the sureties upon the injunction bond from liability would have the same effect on the indemnifying bondsmen. Thomas and Bryant could not, either by collusion with the plaintiff, or by negligently suffering judgment to go against them, deprive their bondsmen of the defense that the plaintiff had by his own voluntary act extinguished his right of action against Thomas and Bryant, and that by the extinguishment of the latter's liability their liability was also extinguished. The nature of the indemnity taken by Thomas and Bryant was not such as to render them responsible, notwithstanding the release of their principal.

The petition for a rehearing will be denied.

*Rehearing denied.*