### WRIGHT STEAM ENGINE WORKS v. McADAM.

(Supreme Court, Appellate Division, First Department. . June 15, 1906.)

1. PLEDGES—INTEREST PLEDGED.

In an action for the possession of personal property, evidence *held* to show that a pledgee thereof had a special interest in it, and that he in turn pledged it as security for debts of the original pledgor to a third person, not on behalf of the original pledgor, but as a pledge of his individual interest.

2. PRINCIPAL AND SURETY—DISCHARGE OF SURETY—ALTERATION OF CONTRACT.

Where a corporation pledged personal property as a security for its debt, and the pledgee in turn pledged his individual interest in the property as a security for the corporation's debt to the third person, and there was an agreement entered into between the corporation and the second pledgee, fixing the amount due by the corporation, and providing that the property pledged should be sold, this was an alteration of the contract releasing the liability of the first pledgee and entitling him to possession of the property.

[Ed. Note.—For cases in point, see vol. 40, Cent. Dig. Principal and Surety, §§ 146, 158.]

3. SAME—REMEDIES OF CREDITORS—PLEADING. 

In an action to recover the possession of personal property pledged to plaintiff, where plaintiff's evidence showed that the property was pledged by a surety of the debtor, and that the contract between the debtor and the plaintiff had been altered so as to discharge the surety, this defense is available to the defendant though not pleaded.

O'Brien, P. J., and Laughlin, J., dissenting.

Appeal from judgment on report of referee.

Action by the Wright Steam Engine Works against the New York Kerosene Oil Engine Company. George W. McAdam substituted as defendant. From a judgment in favor of defendant, entered pursuant to the decision of a referee, plaintiff appeals. Affirmed.

Argued before O'BRIEN, P. J., and PATTERSON, INGRAHAM, LAUGHLIN, and CLARKE, JJ.

Charles De Hart Brower, for appellant.

Harlan F. Stone, for respondent.

INGRAHAM, J. The action was originally brought against the New York Kerosene Oil Engine Company. Subsequently, George W. McAdam, the present defendant, was substituted as a party defendant, and the plaintiff served an amended summons and complaint. The amended complaint alleged that on or about the 1st day of May, 1902, for the purpose of securing to the plaintiff a claim of $725 against a corporation styled the "Riotti Company," certain chattels were, by the duly authorized agents of said company, delivered to and pledged with the plaintiff; that the claim of the said company remains unpaid; that on the 10th day of May, 1904, and while the said chattels were in the

possession of this plaintiff under said pledge, the said chattels were, without the knowledge or consent of the plaintiff, taken wrongfully from its possession by one William G. McCrea; that the said chattels were in the possession of the defendant, who detained the same wrongfully from the plaintiff. And the relief demanded is that the plaintiff recover possession of the chattels, or the sum of $725, the value thereof, with damages for the detention thereof. The answer denied that the chattels were deposited with the plaintiff, as alleged in the complaint, or that the plaintiff had a claim against the Riotti Company, or that the defendant detained the chattels from the plaintiff wrongfully, or that the same were taken from the possession of the plaintiff. It alleged that the chattels did not belong to the Riotti Company; that the Riotti Company was not indebted to the plaintiff, that there was an action pending between plaintiff and the Riotti Company; and that these chattels were delivered to defendant for a good and valuable consideration by one William G. McCrea, who was then in the lawful possession of the same.

The action was referred to a referee to hear and determine. The referee found that on the 3d day of September, 1901, McCrea, being in possession of the goods and chattels mentioned in the complaint, delivered them to the plaintiff as security for an indebtedness which the plaintiff then claimed was owing from the Riotti Company, to recover which the plaintiff had theretofore brought an action against the Riotti Company in the Supreme Court of this state, which action was then pending and undetermined; that in said action the defendant the Riotti Company had set up a counterclaim against the plaintiff in excess of the plaintiff's claim; that, upon the delivery of said chattels to the plaintiff by the said McCrea, the plaintiff hired premises at Newburgh, N. Y., and placed the said chattels therein and paid for the rent of said premises during the period from September, 1901, to May, 1904, in all the sum of $480; that on or about the ———— day of May, 1904, McCrea removed said goods and chattels from the premises where they had been placed by the plaintiff, and for value received delivered the same to the defendant George W. McAdam; that after this action was begun, and shortly before the answer of the defendant was interposed, and on or about the 11th day of October, 1904, the plaintiff and the Riotti Company duly made and executed an agreement in writing, whereby it was stipulated and agreed that the alleged indebtedness of the Riotti Company should be adjusted at the sum of $5,000; that all securities held by the plaintiff for such alleged indebtedness should be sold and the net proceeds thereof, as well as the net proceeds of securities theretofore sold, applied towards the payment of said sum of $5,000, and that any surplus of such proceeds over the sum of $5,000 should be paid to the Riotti Company, and that then in any event mutual releases should be exchanged; that such settlement and agreement were made without the knowledge of McCrea and without the knowledge and consent of the defendant, and knowledge thereof did not come to the defendant until the facts came out upon the trial in this action; that the said agreement of settlement was put in evidence by the plaintiff on the trial of this action without objection—and, as a con-

clusion of law, that McCrea delivered the said goods and chattels to the plaintiff as security for the debt of the Riotti Company, the principal debtor; that the execution of the agreement of settlement by and between the plaintiff and the Riotti Company and their dealings substantially varied the contract of said McCrea without his assent, and operated as a discharge of his obligation, and released the said goods and chattels from the pledge thereof made by him to the plaintiff; that the defendant McAdam, having acquired for value the right, title, and interest of McCrea to said goods and chattels, became entitled to the possession thereof free from any lien in favor of the plaintiff; and that the defendant McAdam was entitled to judgment of a dismissal of the complaint. Judgment was directed for the defendant for the possession of said goods and chattels.

Upon the trial, the president of the plaintiff testified that in the years 1900, 1901, and 1902, the plaintiff was doing considerable work for the Riotti Company, and that McCrea owned a majority of the stock of that company and was a director thereof; that there was due and owing in September, 1901, from the Riotti Company to the plaintiff about $10,000 or $11,000; that in September, 1901, the witness and McCrea had numerous conversations regarding the Riotti Company's indebtedness to the plaintiff, and that the amount then standing on the plaintiff's books was something like $18,000; that McCrea said that he had 16 or 17 launches of the Riotti Company for which he had a bill of sale; that they were his, and that he would turn them over to the plaintiff as security for the indebtedness of the Riotti Company, and at the same time he assumed $7,000 or $8,000 of indebtedness of the Riotti Company and gave his notes for it; that the next day the plaintiff took possession of these launches and stored them in a warehouse at Newburgh, where they remained from September, 1901, to May or June, 1904, when they were removed from the warehouse by McCrea, without the consent of the plaintiff. It was subsequently admitted by the defendant that McCrea took these boats from the warehouse in the early part of May, 1904, and that they were subsequently in the possession of the defendant. The notes that McCrea gave to the plaintiff, amounting to $7,300, on account of the indebtedness of the Riotti Company to the plaintiff, were subsequently paid by McCrea.

On behalf of the defendant, it was proved that these chattels were delivered by the Riotti Company to McCrea and one Street, as security for moneys advanced by them to the Riotti Company, and a formal bill of sale was executed by that company to McCrea, and that under that bill of sale Street and McCrea took possession of the property. It also appeared that the plaintiff had commenced an action against the Riotti Company for a breach of a contract and for work done for it; that the Riotti Company answered setting up a counterclaim for damages against the plaintiff for its failure to perform its contract with the Riotti Company and claimed the sum of $35,000 damages, a sum largely in excess of that claimed by the plaintiff against the Riotti Company. But McCrea subsequently paid a large sum of money on account of the Riotti Company, and Street also advanced $3,000 for its account. The plaintiff then offered in evidence an agreement be-

tween it and the Riotti Company, which recited the claims of the two companies against each other, and that the Riotti Company had transferred in trust to McCrea and Street certain property of the said company; that with the knowledge, consent, and approval of said company and Street, the said McCrea delivered to and pledged to the plaintiff the property transferred to them; that an action was pending in which the plaintiff in this action was plaintiff and the Riotti Company defendant, to recover the claims of the plaintiff against the Riotti Company, in which action the company had set up counterclaims for damages; that, for the purpose of settling all disputes between the plaintiff and the company, it was agreed that the plaintiff's claims as against the Riotti Company, and also all claims of the Riotti Company as against the plaintiff as set up in the counterclaims, were compromised and settled at the sum of $5,000; that, in order to pay said claim, the plaintiff should credit thereon the net amount of all moneys received from the sales of the portions of the said security theretofore sold, and should sell either at public or private sale the remainder of said security then on hand and apply the net proceeds of said sales upon said claim, rendering the surplus, if any, to said company; that, if after the sale of all of said security any deficiency should remain, then the plaintiff agreed to release and cancel the same, and the parties were to execute and deliver to each other general releases. This agreement, dated October 11, 1904, after McCrea had taken possession of the property, was without the knowledge or consent of either McCrea or Street, and neither Street nor McCrea had any notice of this agreement until it was produced upon the trial of this action. When this agreement was produced in evidence by plaintiff, counsel for the defendant moved to dismiss the complaint and for judgment in the defendant's favor, upon the ground that as the deposit of this security by McCrea was to secure the claim of the plaintiff against the Riotti Company, which was disputed by the Riotti Company, the execution of the agreement without the knowledge or consent of the surety discharged him and the property that he had deposited as security for the claim of the plaintiff against the Riotti Company. There was further evidence that McCrea transferred these boats to the defendant for a valuable consideration, which consisted of advances made by the defendant to McCrea or for his account, and that these boats were delivered to the defendant by McCrea, with the understanding that the defendant was to take them for $1,000 and give McCrea credit for that amount.

I think it is apparent that McCrea had a special interest in this property which he had pledged to the plaintiff as security for advances which he and Street had made to the Riotti Company. The evidence is undisputed that McCrea and Street advanced to the company an amount largely in excess of the value of these launches, and that the launches were then formally transferred to McCrea by the Riotti Company as security for these advances. It is also clear that McCrea pledged this property, not on behalf of the Riotti Company, but as a pledge of his individual interest or property in them to secure any indebtedness that existed in favor of the plaintiff against the Riotti Company. Occupying that relation, an agreement was made between

the Riotti Company and the plaintiff, by which the company acknowledged an indebtedness to the plaintiff and agreed that the plaintiff should sell McCrea's property to pay that indebtedness. This agreement clearly discharged the surety and relieved the property that the surety had deposited with the plaintiff from any lien for the indebtedness of the Riotti Company. That any change in the contract between the debtor and the creditor releases the surety, and any property that the surety has pledged to secure the indebtedness, is settled. Burnap v. Nat. Bank of Potsdam, 96 N. Y. 125; Tradesmen's Nat. Bank v. Nat. Surety Co., 169 N. Y. 563, 62 N. E. 670; Jones v. Bacon, 145 N. Y. 446, 40 N. E. 216.

The plaintiff, however, claimed before the referee, and now insists, that this defense was not available, as it had not been pleaded by the defendant. The fact, however, was proved by the plaintiff as a part of the plaintiff's case. When presenting the evidence to establish its cause of action, it proved a fact which destroyed its cause of action and established that it was not entitled to the possession of the property for which the action was brought. It has many times been held that evidence of a defense offered by the defendant and received without objection justified the dismissal of the complaint, although that defense was not pleaded; and certainly the rule is not different when the plaintiff itself has proved a defense to the cause of action sought to be enforced. If the defendant had offered this agreement betwen the plaintiff and the Riotti Company in evidence, and it had been received without objection, it is clear that the plaintiff could not afterwards insist that it was not available because not pleaded; but here, the plaintiff having offered it as a part of the proof to establish a cause of action, and which when proved established a defense, it would seem to follow that the plaintiff cannot recover.

I think, therefore, the judgment was right, and that it should be affirmed, with costs.

PATTERSON and CLARKE, JJ., concur.

LAUGHLIN, J. (dissenting). This action was brought to recover the possession of five wooden launches which were pledged to the plaintiff as security for work performed and to be performed for the Riotti Company, the claim for which was in litigation. The plaintiff received the launches from one McCrea, but claims that they were owned by said Riotti Company, and that McCrea, in delivering the same to the plaintiff as security, was acting as the agent of the owner. On the other hand, it is claimed by defendant that McCrea owned the launches jointly with another, and that he pledged them both with the consent of his co-owner and in his own right, thereby becoming a surety to the extent of the property or his interest therein. It appears that, subsequently to the commencement of this action, the plaintiff entered into an agreement in writing with the Riotti Company on the 11th day of October, 1904, compromising the action or the claim to secure which the property was pledged, and agreeing that its claim against the Riotti Company should be deemed $5,000. The terms of the compromise,

so far as material, were, in substance, that the plaintiff would apply the property, including the launches in question which it held as security, in payment of the $5,000, and, if there should be a surplus, would account therefor to the Riotti Company, and, if there should be a deficiency, that it would cancel its claim for the deficiency, after which the parties agreed to execute "each to the other a general release."

The defendant has recovered upon the theory that McCrea was a surety, and that the mere execution of this agreement, without the terms being carried out, released the surety and entitled him to a return of the pledged property. Neither the issue of suretyship nor the discharge of the surety was presented by the pleadings, and it is therefore contended that the defendant was not entitled to defeat the plaintiff upon that theory. It is true that the complaint was framed upon the theory that McCrea was the agent for the Riotti Company, and not its surety, and that the defense of suretyship and the change in the contract discharging the surety was not pleaded. The defendant, however, set up ownership and right to possession of the launches in him, and the plaintiff, after first offering the contract and its being excluded under defendant's objection, and after defendant then showed by parol the substance of the contract on the cross-examination of one of plaintiff's witnesses, introduced the contract in evidence. It is contended in behalf of the appellant that the contract was introduced for the purpose of showing that the plaintiff had a substantial claim and cause of action against the Riotti Company. The defendant subsequently assumed to take advantage of this evidence, and claimed in his motion for a nonsuit that it showed the discharge of the surety, and moved to amend the answer by setting up that defense. This theory was opposed by counsel for the plaintiff, on the ground, in substance, that the contract was made after the commencement of the action, and that its effect was not in issue. The motion was denied, with leave to renew. The motion was renewed at the close of the evidence, and again denied.

I am of the opinion that the plaintiff, by introducing the contract in these circumstances, did not subject itself to this new defense without an amendment of the answer presenting it as an issue. There was some evidence tending to show that McCrea claimed to own the launches, and that he was acting for himself, and not as trustee or agent for the Riotti Company in pledging the launches; but I am of the opinion that that theory of the case is against the preponderance of the evidence and should not be permitted to prevail. The Riotti Company was engaged in manufacturing and selling launches. During the summer of 1899 it became financially embarrassed, and a meeting of its directors and stockholders was held on the 27th day of July of that year, at which McCrea, whose only relationship to the company was that of a stockholder, was present. As a result of the discussion of ways and means of meeting the demand of the creditors, it was determined to give a bill of sale of all the property of the company to Street, an officer and director of the company, and McCrea, for the purpose of securing them for advances made by them in refunding money to purchasers who made advance payments on contracts for launches, and in further advances necessary to render the uncompleted

boats marketable. Accordingly, a bill of sale absolute in form was given to them of all the property of the company, including the launches in question, which then belonged to it, and subject to certain liens or claims of the manufacturers, and they gave each a receipt reciting that they were to take the property "as security for money furnished by us and W. H. Peck to the company to pay pressing indebtedness, and, upon the repayment to us of such moneys, a reconveyance to the company will be made of the property then in our hands."

The evidence tends to show that McCrea and Peck and Street each advanced certain moneys under this trust arrangement; that the funds were handled by McCrea, who also received and took charge of the property of the company; that, in the course of his management of its affairs, he represented to the plaintiff that he had a bill of sale from the Riotti Company of the launches in question, and offered to turn them over to it as a security for the claim it had against the Riotti Company which was in litigation, and to execute a bill of sale thereof to it; that he delivered the launches to it, but, although requested, refused to execute a bill of sale; that at about the same time he purchased all other claims the plaintiff had against the Riotti Company, and in the agreement by which it assigned them to him he agreed to turn over to it as security for its claim in litigation "whatever interest he has in the property of the Riotti Company." It appears that thereafter, and shortly before the commencement of his action, McCrea, without the knowledge or consent of the plaintiff, removed the launches from its possession and sold and delivered them to the defendant to apply on an antecedent indebtedness upon which he was given credit for $1,000, the agreed value of the launches. The evidence, however, indicates that the defendant held other security ample to indemnify him upon McCrea's indebtedness, and that he took the launches merely as further security.

It does not satisfactorily appear that, at the time that McCrea pledged the launches to the plaintiff, he had paid out in the execution of the trust more than he had received; and, if not, he had no individual interest that he could, without the co-operation of his co-trustees, either sell or pledge. But, however that may be, I think that the fair inference is that in this matter he was acting, not for himself individually, but for the Riotti Company with the implied consent of his co-trustee and dealing with the property of the company for which they were both required to account; and that he left the plaintiff to so understand his position. His agreement to assign any interest he had to the plaintiff is not inconsistent with this view. He and Street held the legal title, and the plaintiff knew that, but understood and was justified in understanding that they held it as trustees. Moreover, assuming that he had individually advanced under the trust more than he had received, and that upon that theory he had a special interest in the property which he could sell or pledge so that he could be said to be a surety, still I am of the opinion that the compromise agreement did not affect his rights or remedies against the Riotti Company, and that therefore the property was not released. It is manifest that the plaintiff did not intend to release the property, for the agreement ex-

pressly provides that it was to be sold and applied upon the indebtedness, nor was the indebtedness nor even the liability of the principal discharged or canceled. The contract merely contained an agreement for a cancellation of the deficiency, in which McCrea was not interested, after the application of the property pledged and for a release to be executed subsequently. The release might never have been executed, and the obligation to execute it would be deemed subject to McCrea's right to proceed against the Riotti Company for reimbursement to the extent of his special interest, if any, in the property, in case the pledged property were sold and the proceeds applied in payment of the claim as contemplated. Hubbell v. Carpenter, 5 N. Y. 171; Morgan v. Smith, 70 N. Y. 537; Calvo v. Davies et al., 73 N. Y. 211, 29 Am. Rep. 130; Nat. Bank v. Bigler, 83 N. Y. 51. I am of the opinion, therefore, that the plaintiff was entitled to recover the possession of the property.

It follows that the judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event.

O'BRIEN, P. J., concurs.