(43 App. Div. 158.)

### BARNES et al. v. CUSHING et al.

(Supreme Court, Appellate Division, First Department. July 18, 1899.)

1. BONDS—LIABILITY OF SURETIES.

In March, 1880, the canal board duly designated a bank at Buffalo as a toll-deposit bank, and a contract was made with said bank by the state prescribing the terms on which deposits were to be made in said bank; and a bond was thereupon entered into, providing that the bank should account for and pay over all moneys then in deposit in said bank, or due or to become due to the people of the state during the year 1880. Various deposits were made in the bank, and in March, 1881, there was a balance of $73,000, with interest, to the credit of the state. At that time the canal board passed a resolution under which another contract was made with the bank for the ensuing year, substantially in the same form as that made for the year 1880, except with a difference as to dates; and a new bond was issued, reciting that the bank had agreed to receive and account for deposits on the terms expressed in the contract of even date, which was annexed to the bond. The obligors agreed that the bank should account and pay over the moneys deposited with it. This bond was signed by all the obligors of the bond of 1880, except one. Under the new contract the bank continued to receive deposits and pay drafts during the year 1881, and in April, 1882, the bank became insolvent. Held, that the contract for the deposits for the year beginning March, 1881, was a new

and distinct contract, and that, as the bank had paid all drafts made upon it during the year 1880, the sureties on the bond given in March, 1880, were not liable for the default made in April, 1882.

**2. SAME—CONTRIBUTION.**

Sureties on a bond made in 1880, providing that a bank shall, during the current year, receive certain state moneys, and pay over the same on demand, are liable for the balance due at the end of such year; and the sureties on a contract of a similar kind entered into in 1881 for the ensuing year are responsible for moneys received during the year 1881, and for any sum that remained of the former deposits unpaid under the bond of 1880; so that, on default in the second year, the obligations of the sureties being absolutely distinct, a surety on the second bond, making good such default, could not recover over against a surety on the first bond for his proportionate share of the loss.

Appeal from judgment on report of referee.

Action by Henry S. Barnes and another against Thomas W. Cushing and others. From a judgment entered on the report of a referee, Cushing appeals. Reversed.

Argued before VAN BRUNT, P. J., and PATTERSON, O'BRIEN, McLAUGHLIN, and INGRAHAM, JJ.

David F. Day and Tracy C. Becker, for appellant.
J. A. Dennison, for respondents.

INGRAHAM, J.    The facts in this case are not disputed.  Prior to the year of 1880 the National Bank of Buffalo had been designated by the canal board to receive deposits of canal moneys collected at Buffalo, and as such depository had received on deposit a portion of the canal tolls in each year.    On the 20th day of March, 1880, the canal board, by resolution, duly designated and selected the said bank and other banks at Buffalo as toll-deposit banks; and in pursuance of that resolution a contract was made on the 30th day of March, 1880, between the said bank and the people of the state.    This agreement recites that the canal board has designated the First National Bank of Buffalo to receive one-tenth the deposits of canal moneys collected at Buffalo during the year 1880, and prescribes the terms and conditions under which the said deposits were to be made, which were that the banks should receive the deposits in lawful money of the United States; that at the close of every month during the year the bank should transmit to the auditor of the bank department an account current between the bank and the treasurer of the state; that the bank should pay for the use of said deposits at the rate of 3 per cent. per annum; that the banks should at all times answer upon sight the drafts of the treasurer for all or any part of the deposits it might have in hand in funds current at the banks in the city of Albany in which the treasurer may keep the deposits of the canal-fund moneys (such drafts not to be made until after 20 days from the end of the month within which the moneys drawn for were collected); that the banks should at all times be at liberty to pay the said deposits into the banks of the city of Albany in which the deposits of the canal-fund moneys were for the time kept, and the commissioners of the canal fund should have the right to require payment of all the moneys on deposit in said banks at any time when required, or when

they should deem the same insecure. The agreement then provided that the said party of the first part, in consideration of the premises, "does hereby covenant, promise, and agree to and with the said party of the second part to accept and receive the said deposits on the terms and conditions above specified, and well and faithfully to perform and fulfill everything specified in the said terms and conditions to be performed and fulfilled by the said party of the first part." To secure the performance of these obligations, a bond was executed, signed by the appellant and eight others, of which the plaintiff's testator was one, which recited the fact that the First National Bank of Buffalo had been designated to receive one-tenth the deposits of canal tolls collected at Buffalo, N. Y.; that the said First National Bank of Buffalo had agreed to receive and account for the same on the terms and conditions expressed in its contract thereto annexed; and that in consideration of the tolls, etc., the obligors named "jointly and severally covenant, promise, and agree with the people of the state of New York that said bank shall well and faithfully do and perform all things contained in said contract on its part to be done or performed, and shall well and faithfully account for and pay over all moneys deposited with it, or for which it shall in any way become liable, in and by said contract, according to the terms and provisions thereof, and that said bank shall account for and pay over all moneys now in deposit in said bank, or due or to become due therefrom, to the people of the state of New York." At the time of the execution of this agreement and bond there were on deposit in said bank canal tolls theretofore deposited to the amount of $65,000, with interest, and for which the said bank was liable. During the year 1880 various deposits were made with the bank, and various drafts of the state treasurer were paid by it, so that on the 4th day of January, 1881, there was a balance of the money so deposited due to the state amounting to $73,000, with interest. This balance remained due from the bank down to the 14th day of March, 1881, but no demand was made for its payment. On that day the canal board passed a resolution designating 10 banks of the city of Buffalo as toll-deposit banks for the year 1881, and at the same time prescribed and fixed the form of bond to be given by each of the said banks. In pursuance of this resolution a contract was made between the people of the state and the First National Bank of Buffalo, which was substantially in the same form as made by the bank with the state for the year 1880, except the difference in the dates. On the same day a bond was executed, reciting the fact that the canal board had designated the First National Bank of Buffalo to receive a part of the deposits of canal tolls collected at Buffalo, and that the First National Bank had agreed to receive and account for the same upon the terms and conditions expressed in the contract which was thereto annexed, bearing even date therewith; and that in consideration of the tolls to be deposited in the said bank, etc., the obligors "jointly and severally covenant, promise, and agree with the people of the state of New York that said bank shall well and faithfully do and perform all things contained in said contract on its part to be done or performed,

and shall well and faithfully account for and pay over all moneys deposited with it, or for which it shall in any way become liable, in and by said contract, according to the terms and provisions thereof, and that said bank shall account for and pay over all moneys now on deposit in said bank, or due or to become due therefrom, to the people of the state of New York." This bond was signed by all of the obligors of the bond of 1880, except this appellant, in whose place there was substituted one Henry Zink. The appellant had been asked to join in this bond, but had refused, and so a new obligor had been secured. The designation of the bank, and the contract between the canal board and the bank, appear to have been made under section 2 of chapter 358 of the Laws of 1840, which authorized the canal board to designate banking associations to receive the deposit of tolls or other canal moneys, provided such associations shall comply with such terms as may be prescribed by the board. Under this new contract the bank continued to receive deposits and pay drafts of the state during the year of 1881; and on the 18th day of April, 1882, the said bank was indebted to the people of the state of New York for a balance of $72,293.43. It does not appear that any demand was made upon the bank for this balance at the end of the year 1881; the last deposit having been made by the state in December, 1881, and the last draft drawn by the state upon the bank on December 1, 1881. On the 14th day of April, 1882, the bank became insolvent and suspended business, and a receiver was appointed. Subsequently the people commenced an action against the sureties on the bond for the year 1881, and in that action recovered a judgment for the amount due by the said bank, less the amount received by the people from the receiver; and that judgment the plaintiff's testator, Joseph C. Barnes, paid to the people of the state, the amount aggregating $58,802.94. The people also brought an action against this appellant upon the bond to secure the performance of the 1880 contract, which action was tried before a referee and the complaint dismissed; but the judgment was reversed by the general term of the supreme court, in the Third department (People v. Cushing, 36 Hun, 484). The only question discussed upon that appeal was whether or not the making of the new contract for the receiving of the canal tolls for the year 1881, and the giving of the bond to secure its faithful performance, and the payment of the amount due at the close of the year ending 1880, was an accord and satisfaction of the obligations assumed under the old contract, and thus discharged the surety. It was held by the general term that this new contract was not an accord and satisfaction of the old, as between the plaintiff and the people of the state, on the ground that there was nothing to show that the contract and bond of 1881 were accepted for and in lieu of that of 1880. This case was not retried, and the final liability between the appellant and the state on the bond of 1880 was not determined; the people having collected, in an action upon the bond of 1881, the amount due it from the bank.

The question presented is whether this plaintiff's testator was entitled to contribution from the appellant because of the bond of 1880, and involves the determination of the question whether Cushing was

liable to the people of the state upon his bond given to secure the performance of the contract of 1880; and, second, if he was liable to the state, whether the relation existing between this appellant, as obligor upon the bond of 1880, and the obligors of the bond of 1881, was such that a surety upon the bond of 1881 could compel contribution for the obligation upon said bond of 1880.

The question of the liability of the appellant to the people appears to have been decided in favor of the people of the state in the case of People v. Cushing, supra. There are considerations not adverted to in the opinion of that case which cause us to hesitate to approve or follow it. By the contract executed in 1880 the bank was designated as a depository of the canal tolls during the year 1880. The agreement recites that this was the effect of the designation. At the end of the year 1880 the contract itself had ceased, and the designation had expired. The bank then held the money as a deposit of canal moneys, and was liable to the state for the balance due upon that deposit. Under the contract the state treasurer had power to draw that money from the bank at any time, and the bank was bound to honor his drafts; and for a failure to honor them the appellant, as a surety, would have been liable. The amount, however, was not drawn by the state, but was allowed to remain on deposit. The contract with the state had expired, and the simple relation of debtor and creditor existed between the bank and the state. In March, 1881, the same bank having on deposit this sum of money to the credit of the state was newly designated to receive the canal moneys for the year 1881. In the new contract this amount on deposit was allowed to remain with the bank, and was to be included in the account current which the bank was required to submit to the auditor of the bank department; and it was provided in the contract that for the use of the deposit the bank was to pay interest at the rate of 3 per cent. per annum; and there was a further provision that the bank should at all times answer upon sight the drafts of the treasurer for all or any part of the deposits it might have in hand, and should render an accounting between the treasurer and the bank on the 1st day of July in each year, or as often as the auditor or commissioner of the canal fund should direct, in which account the bank should be debited with all the deposits made in the bank previous to the time of making such account, and with the accrued interest upon the deposits of said month.

It is clear from a consideration of the contract that the provisions as to interest and the accounting between the bank and the state treasurer, and that the bank should pay all drafts drawn by the treasurer in the name of the people of the state, were intended to, and did, include the amount on deposit at the time the contract was made. Under the contract the bank had the right to retain on deposit this amount due at the close of the year 1880 until it should be called for by the state officers, and to pay interest upon it at the rate designated. The balance due from the bank to the state at the end of the year 1880, and which remained unpaid, came under the provisions of the contract of 1881. The relations of the people of the state and this depository, and their rights and obligations on this

account, were necessarily to be determined from the obligations which the defendant assumed under the contract of 1881, whereby the state required from the bank, as a condition of its appointment, a bond to secure the faithful performance of the 1881 contract, both as to the terms of deposits made during the year 1881, and the payment of the balance due at the time of the execution of the contract for that year. This designation and the contract made with the bank were authorized by the act before cited (section 2, c. 358, Laws 1840), and it would seem that the continued retention of these deposits was in consequence of the designation of the bank as a depository of the canal tolls for the year 1881. But for the execution of the 1881 contract and the giving of the 1881 bond, the bank would have ceased to be a depository of the canal funds, and, having ceased to be such depository, would presumably have been called upon by the state to pay the amount due to it. However that may be, the right of the state to the amount due, and the obligation of the bank to pay the balance of the account to the state, were brought under the terms of the contract of 1881, and that instrument controlled the rights and obligations of the respective parties. There was thus a new agreement between the people of the state and the bank, under which the bank held these deposits as a state depository, and they were to be repaid to the state according to the terms of the new agreement. By the contract of 1880 the bank covenanted, promised, and agreed to accept and receive deposits on the terms and conditions specified, and well and faithfully to perform and fulfill everything specified in the terms and conditions to be performed and fulfilled by it. And this appellant promised and agreed that the bank would well and faithfully do and perform all things contained in said contract on its part to be done or performed, and would well and faithfully account for and pay over all moneys deposited with it, or for which it should in any way become liable by such contract. Had not the bank performed the obligations of this contract when it had received the money deposited with it, and had accounted to the state for it by agreeing to hold it under a new contract made between the state officers and the bank, this appellant, as surety, had covenanted that the bank would perform that agreement to pay all moneys when demanded. The state subsequently made a new contract with the bank, by which the latter was to hold these deposits under the new contract, to pay interest thereon, and to pay the deposits when demanded by the state treasurer; and for the specific performance of that contract the state accepted a new bond. It no longer held this money as a depository under the contract of 1880. The money had been transferred and become a part of the deposits held under the contract of 1881, and the obligations of the bank to the state are controlled by that contract. There is no accord and satisfaction, strictly speaking, of any obligation existing on behalf of the people against either the bank or the appellant as surety for the bank, by the execution of this new contract, and because the bank had performed that contract, so far as appears, in all particulars; and there was no obligation of the surety, for which he was liable to the state because of the failure of the bank to perform its obligation, until after the state

had made a new contract with the bank, under which the bank held the money which it had received under the contract of 1880, by bringing the balance of the account under the contract of 1881, and was to account to the state for it under that contract.

If the terms and conditions of the contract of 1881 had differed from those of the contract of 1880, there would seem to be no doubt of the correctness of this conclusion. If, under the contract of 1881, the obligation of the bank to pay the balance of the deposit would not have accrued until after the treasurer had given 30 days' notice of his intention to draw a draft on this account, which had been continued by the bank under the new agreement, it would be clear, I think, that the bank would not have been in default until the requisite notice had been given, although under the agreement of 1880 the bank was to pay on demand. The fact that the obligations assumed by the bank under the contract of 1881 were the same as under the agreement of 1880 does not bring the obligations under any other contract than that of 1881. What the bank agreed to do was to pay these moneys on deposit with it under the terms of the contract of 1881, and for the performance of that contract the sureties upon the 1881 bond are responsible. When such contract was made and came in force between the parties, the contract of 1880 had expended its force, and by the transfer of the deposits to be held under the 1881 contract the bank had fully performed the terms and obligations of the 1880 contract. That this seems to have been the understanding of the parties appears from the action of the public officers in making a new designation each year, and requiring each year a new bond to be given to secure the payment of the money received. The principle is elementary that the surety is never to be implicated beyond his specific agreement, and his liability is always strictissimi juris, and must not be extended by construction. His contract must be construed by the same rules which are used in the construction of other contracts. The extent of the obligations must be determined from the language used, read in the light of the circumstances surrounding the transaction; but, when the intention of the parties has been thus ascertained, then the courts carefully guard the rights of the surety, and protect him against a liability not strictly within the precise terms of his contract. Association v. Conkling, 90 N. Y. 116. Here the liability of the surety was to answer for any default of the bank under the 1880 contract, and in the payment of the balance due by the bank to the state as it appeared at the termination of that contract. He was not to answer for a default on the part of the bank under a new contract made in 1881, and the appellant's refusal to execute the bond under the 1881 contract was an express refusal to be bound for any default of the bank thereunder. The bank never refused, so far as appears, to pay the balance due at the close of the year 1880. By the redesignation of the bank, and the making of the 1881 contract, the state accepted the obligation of the bank to hold the balance of the account then on deposit under the 1881 contract as a compliance with the conditions of the contract of 1880. Thus, the bank never was in default of its obligations assumed under the 1880 contract. The canal board had power, under

the statute before referred to, to designate this bank as a depository of tolls and other canal moneys, and to provide the terms upon which such deposits should be made. Thus, the situation was exactly the same as though the state had withdrawn the deposits which it held under the 1880 contract, and had redeposited them with the bank under the contract of 1881. The bank having performed all its obligations under the 1880 contract, and having, in substance, accounted for the money in its hands at the end of the year 1880, there was no failure on the part of the bank to pay the balance of the deposit, and the sureties under the contract of 1880 incurred no obligation to the people. It necessarily follows that the sureties upon the bond given for the performance of the contract of 1880 were under no obligation of contribution to the sureties upon the contract of 1880.

It is not necessary to discuss the other questions before referred to. It may be said, however, that the doctrine of contribution rests on the principle that, when the parties stand in equali jure, the law requires equality which is equity, and one of them shall not be obliged to bear the burden in ease of the rest. It is founded, not on the contract, but on the principle that equality of burden, as a common right, is equity. And the obligation to contribute arises from the nature of the relation between the parties. Aspinwall v. Sacchi, 57 N. Y. 335. While it is true that it is not material whether the sureties are jointly or severally bound, or whether their suretyship arose under the same obligation or instrument, or divers obligations or instruments, still it must appear that all of these instruments are for the same identical obligation. This rule is stated in the American & English Encyclopedia of Law (volume 7, p. 334, 2d Ed.):

"They must be liable for the same obligation, and in the same degree. If their liability be for separate obligations relating to the same transaction, or for separate and entirely distinct portions of the same debt, or if the liability of one be secondary to that of the other, under such circumstances there is no contribution between them."

That the sureties upon the bond of 1880 and 1881 were sureties for separate and distinct obligations is clear. They relate to entirely different contracts, to secure the performance of entirely different obligations, and to secure the payment of different sums of money. The sureties under the contract of 1880 would be liable for the balance due at the end of that year. The sureties under the contract of 1881 were responsible for all moneys received during the year 1881, and also for any sum that had remained of the former deposit unpaid at the end of the year. Their obligations depended upon the respective contracts, and it seems to me that this appellant was in no sense a co-surety of the plaintiffs' testator. We do not overlook the fact that by both obligations the sureties upon both instruments were liable to pay the sum of money due at the end of the year 1880; but when the state, under the new contract, accepted the bank as its debtor for the amount due at the end of the year 1880, the sureties under the new instrument were not co-sureties with the sureties under the old instrument for the same engagement. Upon the conceded facts, therefore, it would appear that the plaintiffs were not entitled to recover; and as there is no dispute as to the facts, and the ground

upon which we base our decisions being that the facts as alleged by the plaintiffs fail to justify a recovery, it seems to be useless to order a new trial.

The judgment appealed from should be reversed, and the complaint dismissed, with costs. All concur.