HARRIET PARKS DUPORT (ANDERSON) and GRACE MARGARET PARKS, Appellants, *v.* FIRST NATIONAL BANK OF GLENS FALLS, N. Y., and THE EMERSON NATIONAL BANK OF WARRENSBURG, as Substituted Trustee under the Will of GEORGE H. PARKS, Deceased, for the HARRIET PARKS DUPORT and GRACE MARGARET PARKS TRUST FUNDS, Respondents.

Third Department, July 2, 1941.

*Schwarte, Slade, Harrington & Goldsmith* [*John A. Slade* of counsel], for the appellants.

*Frederick G. Bascom*, for the respondent First National Bank of Glens Falls, N. Y.

*Harry Reoux*, for the respondent The Emerson National Bank of Warrensburg, as substituted trustee, etc.

HILL, P. J. On an earlier trial of this action the complaint was dismissed. That judgment was reversed and a new trial granted (257 App. Div. 693). This appeal is from a judgment dismissing the complaint after a second trial. Plaintiffs are the daughters of George H. Parks, who died in 1917 leaving a last will and testament, probated in that year, in which he created a trust of $10,000 for the benefit of Harriet, and of $15,000 for the benefit of Grace. The trustees were the widow (hereinafter called Mrs. Parks) and an attorney, Louis M. Brown. Prior to May 4, 1923, Mrs. Parks had borrowed $41,000 from the defendant First National Bank of Glens Falls (hereinafter called the Bank) and on that day she negotiated a second loan of $40,000, giving as collateral security $33,000 par value Baltimore and Ohio bonds, and $20,000 par value No. 2 Rector Street, New York City, real estate bonds, which she had purloined from the two trusts. The earlier note was collateralized by ten shares preferred stock Wade & Butcher Corporation, and 1,384 shares of the stock of Glens Falls Portland Cement Company, the property of Mrs. Parks. The $40,000 note was payable on demand when first made, but later was changed so as to have a fixed maturity. It had been reduced to $25,000 and on March 1, 1932, was renewed for six months. At that time, through sales and purchases, the collateral stolen from the trust funds had been changed and consisted of $22,000 par value Baltimore and Ohio bonds and $11,000 Bowker Building bonds. Following the maturity of the note in December, 1932, the Bank made a wash sale of the Baltimore and Ohio bonds, receiving $13,801.70, which was applied on the note. On the same day it purchased a like amount of Baltimore and Ohio bonds. These were sold a few months later at a profit of $1,376.10, for which no credit was given.

In February, 1932, the Bank brought an action seeking a judgment that the Baltimore and Ohio and Bowker Building bonds and the Wade & Butcher stock " have been validly pledged to the plaintiff, and that the claim of the plaintiff thereon as aforesaid is superior and prior to any claim of the defendant as substituted trustee as aforesaid." The Emerson National Bank of Warrensburg, the substituted trustee, was the only defendant in the action. A perfunctory defense was interposed, and the plaintiff obtained a judgment. No appeal was taken.

In October, 1934, the Bank brought another action which is called the "foreclosure" action. The defendants were Mrs. Parks and the Emerson Bank. The prayer of the complaint was that "the defendants and all persons claiming under them or either of them may be barred and foreclosed of all right, title, claim, lien and equity of redemption in said pledged property" and that the property be sold by a referee, the proceeds to be applied to the notes, and the defendant Mrs. Parks adjudged to pay any deficiency. This was undefended and a judgment obtained. Plaintiffs herein sought to intervene, alleging that the Bank, in 1923, when it made the $40,000 loan and received the collateral, knew that the securities had been stolen from the trust funds. The Special Term denied the application. This court affirmed the order (245 App. Div. 776), in effect holding that it had been determined in the action for a declaratory judgment that the Bank received the trust securities without knowledge that they had been stolen. In connection with the affirmance it was stated: "The appellants, beneficiaries under the trust, are proper parties if there be an issue to litigate. However, they should not be permitted to intervene and litigate issues already decided."

On July 9, 1929, proceedings were begun in Warren County Surrogate's Court by Mrs. Parks' cotrustee, Louis M. Brown, to require her to account. It was asserted that she had taken these securities from the trust fund, and had pledged them to the Bank as collateral for her personal loan. An order was made in that proceeding restraining the Bank from permitting her to have access to the safe deposit box "and also from surrendering or delivering to said Grace M. Parks any collateral security which said Bank may now have in its possession for any demands or obligations which said Bank may now hold against said Grace M. Parks (other than the securities or the trust funds) except upon condition of said Bank receiving from her and applying toward payment of its demands the fair market value of any collateral so surrendered." An order requiring her to account was made on July 30, 1929. She defaulted and later was imprisoned for contempt.

The Bank having received the trust securities in 1923 without knowledge that Mrs. Parks had stolen them, it was a holder for value to the amount of the loans to her. After it received notice, it held the property subject to the trust, but with a lien to the amount of the advancements already made. (Restatement of the Law of Trusts, § 303.) It was required to make inquiry in 1929 when it received information that a cotrustee asserted that Mrs. Parks had stolen the securities which it held as collateral. The

inquiry would have disclosed the theft, and the Bank is chargeable with that knowledge from July, 1929. Trust funds in the hands of third persons who have knowledge are impressed with the obligation of the trust. (*Trustees of Union College* v. *Wheeler*, 61 N. Y. 88; *Wetmore* v. *Porter*, 92 id. 76; *Rogers* v. *Squires*, 98 id. 49; *Deobold* v. *Oppermann*, 111 id. 531; *Nestell* v. *Hart*, 202 id. 280; *Warren* v. *Union Bank of Rochester*, 157 id. 259.)

It was judicially determined in the action for a declaratory judgment that the Bank took the trust property as collateral in 1923 without notice that it had been stolen. That determination is the law of the case in connection with this controversy. There has been no determination that these plaintiffs are precluded from questioning the conduct of the Bank in managing and marshaling the trust funds in the payment of Mrs. Parks' debt. In their inception, the $41,000 and $40,000 notes were due on demand. A due date could have been fixed at any time by the Bank, had a demand been made, and if it appears that the rights of these plaintiffs would have been furthered had this been done earlier than it was, the Bank as trustee is responsible to them. Nearly three and a half years elapsed after the Bank had knowledge of the defalcation before the securities were sold, and as late as 1932 the Bank accepted a renewal and gave six months' additional time to Mrs. Parks on the note for which the trust funds were pledged originally, and upon which $25,000 was due. These plaintiffs as ultimate beneficiaries of the trust funds were sureties to the extent of their property which had been pledged for the payment of the note. It is not necessary there be an express contract to establish the relationship of principal and surety, it may be involuntary and arise from circumstances, and be unknown to the obligor. It exists whenever a person becomes responsible for the debt of another. This suit is in equity, and it looks not to the form of the transaction but the substance and intent. A creditor is bound to respect the rules as to principal and surety whenever it exists. (*Grow* v. *Garlock*, 97 N. Y. 81; *Dibble* v. *Richardson*, 171 id. 131.) Any change in the contract between the debtor and creditor releases the surety, and the property that has been pledged to secure the indebtedness. (*Wright Steam Engine Works* v. *McAdam*, 113 App. Div. 872; *Tradesmen's National Bank* v. *National Surety Co.*, 169 N. Y. 563; *Jones* v. *Bacon*, 145 id. 446.) A surety is discharged from liability if the time of payment is extended by contract between the principal debtor and the creditor, without the surety's consent. (*New York Life Insurance Co.* v. *Casey*, 178 N. Y. 381.) When trust property comes into the hands of a third party by a transfer made

in violation of a trust, he holds it subject to advancements made by him before obtaining knowledge that the property had been stolen. He is under the same obligation as the original trustee, and the property is impressed with the trust and with the right of the beneficiary to reclaim it, upon repaying the third party. (*Trustees of Union College* v. *Wheeler, supra; Deobold* v. *Oppermann, supra; Warren* v. *Union Bank of Rochester, supra; Nestell* v. *Hart, supra.*)

It was determined in the action wherein the trustee and substituted trustee were defendants, that the Bank received the bonds without knowledge that Mrs. Parks had stolen them. In a later action it was determined that plaintiffs were bound by that determination. However, plaintiffs have property rights and interests distinct from those of the substituted trustee in the management and application of the trust funds by the Bank, and may recover in this action for mismanagement or negligence. Should it be determined that plaintiffs' cause of action for mismanagement, misapplication and negligence may not be maintained against the Bank because of the default judgment in the 1934 foreclosure action, then the remedy is against the Emerson Bank, the substituted trustee, for failing to defend that action. There is not such an identity of interest between the Emerson Bank and these plaintiffs that the foreclosure judgment is *res judicata* against them. (*Williams* v. *Barkley*, 165 N. Y. 48, 58; *Mun. Serv. R. E. Co.* v. *D. B. & M. Holding Corp.*, 257 id. 423; *Hartford Acc. & Ind. Co.* v. *First Nat. Bank*, 281 id. 162.)

From July, 1929, when it became generally known that Mrs. Parks had looted the trust estate, the Bank did little toward closing its affairs with her, and in March, 1932, following other renewals, extended the due date of the $40,000 note which had been reduced to $25,000, by accepting a renewal to become due September 1, 1932. This extension released the trust securities from the lien of the note. In 1929, 1930 and 1931 the Glens Falls Cement Company stock was carried upon the books of the company at thirty dollars a share. Sales were made during those years at forty dollars a share. The value of the 1,384 shares should be fixed for the purposes of this suit as $41,520, or thirty dollars a share. The sale of the Baltimore and Ohio bonds and the repurchase the same day through the same brokerage house was, in effect, a sale by the bank as trustee to itself. The trust estate should be credited with $1,376.10, the profit later realized by the Bank. It is conceded that the Bowker bonds were of the value of $1,760, and this amount should be charged against the Bank as a credit upon Mrs. Parks' indebtedness.

The account between these plaintiffs and the Bank should be stated as follows:

The bank is chargeable as follows:

| | | |
|---|---:|---:|
| 1,384 shares Cement stock, at 30 | $41,520 | 00 |
| Amount credited for Baltimore and Ohio bonds | 13,801 | 70 |
| Profit by repurchase and sale of Baltimore and Ohio bonds | 1,376 | 10 |
| Bowker bonds | 1,760 | 00 |
| | $58,457 | 80 |
| Amount due the bank less the $25,000 renewal note and interest | 43,647 | 06 |
| Amount for which plaintiffs are entitled to judgment with interest | $14,810 | 74 |

The findings and the form of the decision in accordance with the opinion should be settled either by agreement between the parties or before the presiding justice of this court, at Norwich, N. Y., on any day agreeable to counsel and the court. If the decision is not settled before the opening day of the fall term of court, it will be settled on that date, at ten o'clock in the morning.

BLISS, SCHENCK and FOSTER, JJ., concur; CRAPSER, J., dissents and votes to affirm the judgment appealed from.

Judgment reversed on the law and facts, with costs.

Judgment directed in favor of plaintiffs in the sum of $14,810.74, with interest from appropriate dates granted, with costs.

Findings of fact inconsistent with the opinion reversed and conclusions of law disapproved.

The reversal of specific findings and the form of the decision in accordance with the opinion may be settled either by agreement between the parties or before the Presiding Justice at Norwich, N. Y., on any day agreeable to counsel and the Presiding Justice. If the decision be not settled before the opening day of the September Order and General Calendar Term it will be settled on that day at the Appellate Division, Third Department, Consultation Room, at ten o'clock in the morning of that day.