HARRIET P. DUPORT et al., Respondents, *v.* FIRST NATIONAL BANK OF GLENS FALLS, Appellant, and EMERSON NATIONAL BANK OF WARRENSBURG, as Trustee, Respondent.

Argued April 16, 1942; decided June 4, 1942.

*Frederick G. Bascom, James McPhillips, E. C. Fitzgerald* and *A. P. Robertson* for appellant. The bank took the trust bonds as a *bona fide* purchaser for value, without notice of the breach of trust, and without knowingly taking part in an illegal transaction; therefore the bank held the bonds free of the trust and was under no liability to the beneficiaries on the ground of negligence; nor had plaintiffs any rights against the bank except to require a sale of the rest of the collateral at its full value and that any excess above the amount of the debt be returned to the trusts; since no question is raised as to the *bona fides* of the sale of 1935, when the other collateral was sold, and a deficiency resulted therefrom greater than the amount of any note as to payment of which it is claimed the trust bonds were discharged, there can be no recovery. (*Willets* v. *Hatch*, 132 N. Y. 41; *Smith* v. *Savin*, 141 N. Y. 315; *Melkon* v. *Am. Ex. Irving Trust Co.*, 251 N. Y. 566; *Strassburger* v. *Irving*

*Trust Co.*, 261 App. Div. 210; *Newcomb* v. *Hale*, 90 N. Y. 326; *Sehon-Stevenson & Co.* v. *Union Trust Co.*, 113 Fed. Rep. [2d] 968; *Silverman* v. *Sterling Nat. Bank*, 272 N. Y. 469; *Turnbull* v. *Longacre Nat. Bank*, 249 N. Y. 159; *Levy* v. *Leonard*, 231 App. Div. 763; *Gouert* v. *Mechanics & Metals Nat. Bank*, 176 App. Div. 507; *Costello* v. *Costello*, 209 N. Y. 252.) Notice to the bank that the bonds belonged to the trust did not deprive the bank of the right it acquired by the terms of the pledge to apply the proceeds of sale of the collateral to the items of the indebtedness as it elected or to become the purchaser of the collateral. (*Silverman* v. *Sterling Nat. Bank*, 272 N. Y. 469; *Thompson* v. *St. Nicholas Nat. Bank*, 113 N. Y. 325; *Farwell* v. *Importers Nat. Bank*, 90 N. Y. 483; *Commercial Nat. Bank* v. *National Surety Co.*, 259 N. Y. 181; *Smith* v. *Savin*, 141 N. Y. 315; *Thompson* v. *St. Nicholas Nat. Bank*, 113 N. Y. 325; *Fall River Nat. Bank* v. *Slade*, 153 Mass. 415; *Tolerton & Stetson Co.* v. *Roberts*, 115 Iowa, 474; *Advance Thresher Co.* v. *Hogan*, 74 Ohio St. 307; *Livermore Falls Trust & Banking Co.* v. *Richmond Mfg. Co.*, 108 Me. 206; *Kissire* v. *Plunkett-Jarrell Grocer Co.*, 103 Ark. 473.)

*John A. Slade* for plaintiffs-respondents. The Appellate Division properly directed judgment against the defendant-appellant bank. (*McNeil* v. *Tenth Nat. Bank*, 46 N. Y. 325; *Grow* v. *Garlock*, 97 N. Y. 81; *Colgrove* v. *Tallman*, 67 N. Y. 95; *Farwell* v. *Importers Nat. Bank*, 90 N. Y. 483; *Smith* v. *Savin*, 141 N. Y. 315; *LeMarchant* v. *Moore*, 150 N. Y. 209; *King* v. *Milford Nat. Bank*, 168 Misc. Rep. 571; *Mullen* v. *Quinlan & Co.*, 195 N. Y. 109; *National Park Bank* v. *Koehler*, 204 N. Y. 174; *Burnap* v. *National Bank of Potsdam*, 96 N. Y. 125; *Rutherford Nat. Bank* v. *Manniello*, 240 App. Div. 506; 266 N. Y. 568; *Breed* v. *National Bank of Auburn*, 57 App. Div. 468; 171 N. Y. 648; *Schuylkill Fuel Corp.* v. *Nieberg Realty Corp.*, 250 N. Y. 304; *Grace* v. *Corn Exchange Bank Trust Co.*, 287 N. Y. 94.) The right of the bank acquired by the terms of the original pledge to apply the proceeds of sale of the collateral to the indebtedness as it elected was conditioned by the notice of the trust ownership. (*Hidden* v. *Bishop*, 5 R. I. 29; *Neimcewicz* v. *Gahn*, 3 Paige, 614; *Wheelwright* v. *DePeyster*, 4 Edw. Ch. 242; *Vartic* v. *Underwood*, 18 Barb. 561; *Smith* v. *First Nat. Bank*, 151

App. Div. 317.) The judgments obtained by the bank against the trustee are not *res judicata* as to any of the issues determined in this action. (*First Nat. Bank* v. *Parks*, 245 App. Div. 776; *Bedford Ice Palace, Inc.*, v. *Brooklyn Trust Co.*, 246 App. Div. 734; *Brennan* v. *Hall*, 131 N. Y. 160; *Matter of Straut*, 126 N. Y. 201; *Western R. R. Co.* v. *Nolan*, 48 N. Y. 513; *DeGraaf* v. *Wyckoff*, 118 N. Y. 1; *Williams* v. *Barkley*, 165 N. Y. 48; *Municipal Serv. R. E. Co.* v. *D. B. & M. Holding Corp.*, 257 N. Y. 423; *Hartford Acc. & Ind. Co.* v. *First Nat. Bank*, 281 N. Y. 162.)

LEHMAN, Ch. J. The plaintiffs are beneficiaries of two trusts established under the will of their father, George H. Parks, who died on July 1, 1917. The testator named his wife, Grace M. Parks, as trustee. She appropriated bonds in which the trust funds were invested and pledged them, together with securities which were her personal property, as collateral security for loans made to her by the defendant First National Bank of Glens Falls, N. Y. In February, 1935, long after the bank had notice that part of the securities pledged with it as collateral had been wrongfully appropriated by the trustee to her own use, the bank sold the collateral it held. The proceeds both of the securities which were the personal property of the trustee and of the securities which had been taken from the trust fund were insufficient to pay the indebtedness of the pledgor.

The plaintiffs then brought this action to recover damages which they claim arose from the failure of the bank " to marshal the said collateral held by it, part of which belonged to said Grace M. Parks and part of which belonged to said trust and was illegally pledged by her, and to use due diligence to exonerate the said trust securities and to apply all of the collateral belonging to said Grace M. Parks to her indebtedness before resorting to the trust securities." The bank denies that it has been derelict in any duty it owed to the plaintiffs and urges that many of the issues which the plaintiffs seek to raise have been conclusively adjudicated in its favor in previous litigation.

The case was tried by the court without a jury. The court found, among other things, that the 20th day of December, 1932, " was a reasonable time within which said First National Bank of Glens Falls, N. Y., should have liquidated said collateral pledged

with it to secure payment of the said indebtedness of Grace M. Parks," but the court also found that even if all of said collateral had been liquidated on said 20th day of December, 1932, and the proceeds applied upon the indebtedness of said Grace M. Parks, a deficiency would have resulted. From these findings the conclusion followed that even though the bank may have been derelict in failing to liquidate its indebtedness in 1932, no damage to the plaintiffs resulted from that dereliction. The complaint was, therefore, dismissed on the merits. The Appellate Division reversed the judgment on the law and the facts and directed judgment in favor of the plaintiffs against the defendant First National Bank of Glens Falls, N. Y., for the sum of $14,810 damages, with interest from December 20, 1932.

There is little if any conflict of testimony on any issue except perhaps upon the disputed question of the value on December 20, 1932, of 1,384 shares of stock of Glens Falls Portland Cement Company, the personal property of Mrs. Parks, which she had pledged as part of the collateral for the loan to her. The trial court has found that the value of the stock in 1932 was twenty dollars a share. The Appellate Division has found that its value at that time was thirty dollars. The trial court pointed out that even if the stock had been sold in 1932 for much more than thirty dollars, the proceeds of the sale of all the collateral held by the bank would have been insufficient to satisfy in full the indebtedness due to the bank. The value of the collateral in 1932 as found by the Appellate Division was $58,457.80. The indebtedness of Mrs. Parks to the bank in December, 1932, was $68,647.06 — more than $10,000 in excess of the value of the collateral so found by the Appellate Division. Included in this indebtedness there was, however, an unpaid note of Mrs. Parks, which the bank had renewed for six months in March, 1932, after it had notice that Mrs. Parks had wrongfully pledged securities belonging to the trust estate. The Appellate Division concluded that by such renewal and extension the bank lost the right to apply upon that note for $25,000 the proceeds of the collateral which had been pledged. We need examine no other question if that conclusion is unsound.

In 1930 by decree of the Surrogate's Court, Mrs. Parks, the unfaithful trustee, was removed and in March, 1931, the Emerson

National Bank of Warrensburg was substituted as sole trustee. To establish its right as a *bona fide* holder for value to the collateral which the unfaithful trustee had pledged as security for loans, First National Bank of Glens Falls, N. Y., brought an action in February, 1932, against the substituted trustee. In that action judgment was entered on April 13, 1932, by which it was " Adjudged, that the plaintiff is a *bona fide* holder for value and in good faith and in due course of all bonds held by it pursuant to the terms of any notes signed by Grace M. Parks pledging the same and particularly of $22,000 Baltimore & Ohio Railroad Company $4\frac{1}{2}\%$ bonds and $11,000 419 Fourth Avenue Bowker Building bonds now held by it."

Among the " notes signed by Grace M. Parks " was the note for $25,000 which had been extended for six months on September 1, 1931. In March, 1932, while the action for a declaratory judgment was pending, the bank again extended the time of payment by accepting in renewal of the note a new note payable six months thereafter. It is said that at that time the trust estate stood as the mere surety for the debt, which was secured by bonds belonging to the estate as well as by stock belonging to the debtor personally.

Doubtless, upon equitable principles, the trustee could have demanded that the bank should resort to the bonds of the estate which had been wrongfully pledged as collateral for the loan only if the bank failed to obtain satisfaction of the loan from the debtor or out of property belonging to the debtor. (*Smith* v. *Savin*, 141 N. Y. 315.) A court of equity might direct that upon the sale of the collateral the bank should marshal the securities which it held. The relationship of the trustee to the bank was analogous to that of a surety. (*Farwell* v. *Importers & Traders' Nat. Bank*, 90 N. Y. 483.) There may be question whether the analogy is so complete that by extension of the time for the payment of a note long past due, the lien of the bank upon the collateral belonging to the trustee was automatically canceled, though it is not shown that by such extension the trust estate was injured. We do not decide that question now. It is not presented upon this record.

It is true that in their complaint the plaintiffs allege not only that the bank was derelict in the performance of the duty it owed to the trust estate by its failure to marshal the collateral which it held

and to collect the indebtedness of Grace M. Parks within a reasonable time from the proceeds of the collateral which was the personal property of the debtor, but they allege also that the bank " extended the payment of a large amount if not all of the said indebtedness of said Grace M. Parks and accepted renewal notes therefor without notice to these plaintiffs or to the defendant substituted trustee which said extensions released said trust securities or a large portion thereof from said indebtedness." The bank sold some of the trust estate bonds in 1932 with the consent of the substituted trustee and applied the proceeds upon the indebtedness of Mrs. Parks. The remainder of the collateral which the bank held for the indebtedness of Grace M. Parks was sold by a referee pursuant to a judgment entered in February, 1935, in an action brought by the bank for the foreclosure of the lien of the bank upon the collateral pledged with it. The substituted trustee was named as the defendant in that action. The beneficiaries of the trust who are the plaintiffs here sought to intervene in that action. Their motion was denied on the ground that they were not necessary parties. The complaint in that action set forth the amounts due on the unpaid notes and asked that the collateral be sold, and that the proceeds be applied in payment of the amount due. The judgment recites that the plaintiff " having given proof of the amount due on the notes mentioned in the complaint," the court finds in detail the amount due and directs that the collateral be sold in the order therein specified, and " that from the moneys arising from said sale there be paid to the plaintiff the amount *then due as aforesaid.*" There can be no doubt that the judgment against the trustee is binding upon those interested in the trust estate, including the plaintiffs who, nevertheless, have been awarded judgment against the bank based upon a finding that the moneys arising from the sale could be used to pay, not the amount then due to the bank as found by the court in the foreclosure action, but a lesser amount.

We need not pause to examine the arguments now presented to sustain the plaintiffs' contention that the judgment in the foreclosure action does not constitute a conclusive adjudication binding upon these plaintiffs, which precludes them from now urging that by extension of the time of payment of a note for $25,000 the bank released the bonds belonging to the trust estate which had been

wrongfully pledged by the trustee as collateral security for that note. We assume for the purposes of this appeal that upon this record the Appellate Division correctly decided that the extension had that effect. The release of the bonds as collateral security for the payment of part of the indebtedness for which they had been pledged can be of no benefit to the trust estate if, even after such release, the pledged bonds belonging to the estate are insufficient security for the remainder of the indebtedness.

The lien of the bank upon the stock of the Glens Falls Cement Company which was the personal property of the pledgor would, of course, not be discharged by the extension of the time of payment of part of the pledgor's indebtedness. It would still be security for the entire indebtedness, though the pledged bonds belonging to the trust estate would be security for only a part of the indebtedness. Though, as we have said, the bank, upon equitable principles, was bound to marshal the collateral belonging to the trust estate if the indebtedness due to the bank could be satisfied out of the proceeds of the collateral belonging to the debtor, yet " the doctrine of equitable marshalling of assets and equitable subrogation is applicable, * * * only where ' it will not trench upon the rights or operate to the prejudice of the party entitled to the double fund ' (1 Story's Equity Jurisprudence [10th ed.], § 633)." (*Womans Hospital* v. *67th St. Realty Co.*, 265 N. Y. 226, 235.) By extending the note for $25,000 for six months, the bank had not sought an unfair advantage from the trust estate or caused any injury to it. The conclusion that the extension of part of the indebtedness discharged *pro tanto* the lien of the bank upon the property of the trust estate which it held as collateral, is based upon very technical considerations. Such discharge would leave the bank in the position of holding two funds as collateral security for part of the indebtedness due to it, while one of those funds was collateral security also for the remainder of the indebtedness. The bank was under no duty to marshal the collateral in manner which would leave any part of the indebtedness unpaid. It might apply the proceeds of the collateral which alone was security for part of the indebtedness upon that part, and it might apply the proceeds of all the remaining collateral upon the other indebtedness. (See 4 Bogert on the Law of Trusts and Trustees, p. 2700 *et seq; Farmers Loan & Trust Co.*

v. *Kip,* 192 N. Y. 266, 283; *Sowell* v. *Federal Reserve Bank,* 268 U. S. 449, at pp. 456, 457.)

The bonds belonging to the trust estate were, it is undisputed, insufficient in value in 1932 and thereafter to satisfy the part of the indebtedness for which they remained collateral security, even assuming that by extension of the note for $25,000 they were released from. any lien as collateral for that note. The stock of the Glens Falls Cement Company, even if it had been sold in December, 1932, at the value fixed by the Appellate Division, would have been insufficient to satisfy the indebtedness for which it stood as security. Thus, even though every contention of the plaintiffs be sustained they have failed to show any wrongful conduct on the part of the bank which injured them.

The judgment of the Appellate Division should be reversed and that of the Trial Term affirmed, with costs in this court and in the Appellate Division.

LOUGHRAN, FINCH, RIPPEY, LEWIS, CONWAY and DESMOND, JJ., concur.

Judgment accordingly.