OPINION OF THE COURT
Seymour Schwartz, J.
This action has been presented for determination on a *1059 stipulated set of facts set forth in open court on February 1, 1979 and additional stipulated facts provided on March 20, 1979 when oral argument was heard.
On April 13, 1976 Alvin Ross and Louis Cohen, co-owners of defendant Worth Electric Supply Co., Inc. (Worth), each borrowed $10,000 from Middle Village Credit Union (Credit Union) and on April 15, 1976 deposited the proceeds of the loans into the account of Worth. Each loan was cosigned by the maker’s wife and the other shareholder and his wife. Automatic life insurance coverage for the borrower was provided by Credit Union through CUNA Mutual Society to guarantee payment in the event of the death of a maker, the premium for which was actually paid by the maker as part of the cost of the loan. The proceeds of the loans appeared on the books of Worth as individual loan accounts from Ross and Cohen.
Five monthly payments on the two loans were made by Worth directly to Credit Union by its corporate checks. In October, 1976 Alvin Ross died. The balance of his loan was then $8,610 and was paid by the insurance carrier to Credit Union, closing out the Ross loan account. Worth then posted its books to show the Ross loan as paid. The administratrix for Ross now sues Worth to recover the claimed balance of the loan due to the estate.
Simply put, the issue is who is to be finally benefited by the proceeds of the life insurance policy?
Looking through the loan transactions to their economic structure it is clear that there was a single unified transaction, with Worth the true or ultimate borrower from Credit Union. Perhaps because Worth could not borrow on its own or because more favorable terms were available through personal loans by Ross and Cohen, the sole shareholders of Worth, they became the agency for borrowing. The quick deposit by them of the entire proceeds into the Worth account and Worth’s payment each month directly to Credit Union with its own checks amply support this. Put another way, Ross and Cohen were acting as a conduit through whom the borrowed funds flowed to Worth.
Accepting this, in the face of a loan account clearly maintained on the books of Worth, is there legal theory paralleling the analysis of the underlying economic structure of the transaction? There is, and it is in the equitable side of the law of principal and surety.
It is axiomatic that equity looks not to the form of a *1060 transaction but the substance and intent. Suretyship exists whenever one becomes responsible for the debt of another. (Duport v First Nat. Bank of Glens Falls, 262 App Div 267, revd on other grounds 288 NY 261; 72 CJS, Principal and Surety, § 2.) Suretyship depends on for whose benefit the loan is, not upon who signs the note. (Howell v War Fin. Corp., 71 F 2d 237.) The relationship of principal and surety need not arise through express contract; it may be involuntary, arising from circumstances and even be unknown to the obligor (Duport v First Nat. Bank of Glens Falls, supra). In Amalgamated Gold Mines Co. v Ridgely (100 Wash 99), several stockholders in a mining company borrowed money from a bank to enable the corporation to pay certain debts. The proceeds of the loan were immediately turned over to the company, which gave its note and mortgage to the shareholders, payable 30 days prior to the bank’s note. Upon default in the payment of the corporate note, the stockholders foreclosed. In analyzing the relationship among the parties, the court held: "This relation, it seems to us, is of simple determination. The money was borrowed [from the bank] for the use and benefit of the mining company, turned over to it and used by it, in consideration of which * * * the note and mortgage * * * were executed * * * with the plain intention of using the proceeds of the mining company’s note to pay the bank’s note. As between the parties, this was not two transactions * * * it was one transaction, and the rights of the parties must be determined as fixed in that transaction.” (100 Wash, at pp 101-102.)
The court went on to hold that the original shareholders’ loan was made for the sole benefit of the company, and that, had the company note been paid, a fund for the payment of the bank’s note would have been created. Upon payment of the bank, "there would be no liability against the makers of the note.” (100 Wash, at p 102.) The shareholders, who were the original obligors, thus became sureties for the corporation with respect to the bank, even though (1) the shareholders were the original makers, (2) the corporation’s liability on the note was nowhere apparent, and (3) the agreement giving rise to the corporation’s principal status was oral only, and was, at best, implied from circumstances.
Thus analyzed when the Ross loan from Credit Union was paid upon his death by insurance on which Worth was the economic payor of the premium, the payment as between *1061 Worth, the true principal obligor, and Ross, the surety, canceled the debtor-creditor relationship between them. It is fundamental in suretyship that with the payment of the principal obligation the obligations of both principal and surety are discharged. (Barnes v Cushing, 43 App Div 158; 72 CJS, Principal and Surety, §§ 137-139.)
Judgment for defendant.